IN THE COURT OF APPEALS OF TENNESSEE
AT MEMPHIS
February 25, 2015 Session

## SOUMYA PANDEY v. MANISH SHRIVASTAVA

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-08-1259-1     Walter L. Evans, Chancellor**

---

**No. W2014-01071-COA-R3-CV – Filed May 15, 2015**

---

At issue in this appeal are several divorce and post-divorce matters. We conclude that we are without jurisdiction to adjudicate the issues related to the divorce litigation, as they were not timely appealed. With respect to the post-divorce matters, we conclude that the trial court properly exercised jurisdiction over Mother's petition to modify the parties' parenting schedule, that the evidence does not preponderate against its decision to modify the parenting schedule, and that it did not err in its refusal to find Father in civil contempt. Exercising our discretion, we decline to award Mother discretionary costs and attorney's fees pursuant to Tennessee Code Annotated § 27-1-122 or attorney's fees pursuant to Tennessee Code Annotated § 36-5-103(c).

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., joined. ARNOLD B. GOLDIN, NOT PARTICIPATING.

Bryan Matthew Meredith and Robert L.J. Spence, Jr., Memphis, Tennessee, for the appellant, Manish Shrivastava.

Margaret M. Chesney, Memphis, Tennessee, for the appellee, Soumya Pandey.

### MEMORANDUM OPINION[1]

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

## I. Background and Procedural History

This is the second appeal dealing with issues of parenting time between Manish Shrivastava ("Father") and Soumya Pandey ("Mother"). The background facts regarding the initial divorce proceedings between the parties are discussed extensively in *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799 (Tenn. Ct. App. Feb. 22, 2013) ("*Pandey I*"), and we restate them only briefly here. Mother and Father are citizens of India and have one minor child.[2] *Pandey I*, at *1. The parties married in 2005 while living in Ohio, and in 2007, the family moved to Memphis so that Mother, who is a medical doctor, could participate in a four-year residency program at the University of Tennessee. *Id.* In July 2008, Mother filed a complaint for divorce, and Father subsequently filed a counter-complaint for divorce. *Id.* Although the parties entered into a settlement agreement prior to trial that resolved many of the divorce issues, several issues remained a source of contention, including competing claims by the parties to be named the primary residential parent, Mother's request to relocate to Little Rock, Arkansas, for a medical fellowship, and Father's request that the trial court place restrictions on the minor child's passport in order to safeguard against Father's fear that Mother might flee with the child to India. *Id.*

After a four-day bench trial, the trial court entered an order and permanent parenting plan naming Mother the primary residential parent of the minor child and permitting her to relocate to Little Rock with him. *Id.* at *2. The trial court also rejected Father's request that the minor child's passport be kept in a safe deposit box and instead ordered that the parties, "when applying for the child's passport, to 'notify the United States Government that the child can only travel outside of the United States with written consent of the other parent or order of the Court.'" *Id.* Father later filed a motion to alter or amend the divorce decree on multiple fronts. First, he noted that the schedule of days set forth in the parenting plan did not actually total the 145 days of parenting time the parenting plan stated he would receive.[3] *Id.* Second, Father alleged that the Department of State could not issue a conditional passport with the types of restrictions set forth in the final decree. *Id.* Although the trial court subsequently entered an amended divorce decree providing Father with 140 days of parenting time, the trial court again refused to require that the minor child's passport be kept in a safe deposit box. *Id.*

---

[2] The parties' minor child, a son, was born in March 2006. Although our opinion in *Pandey I* states that the minor child is a citizen of the United States and a citizen of India, we note that the minor child is not a true dual-citizen, but is a United States citizen who holds an Indian overseas citizenship.

[3] The parties previously stipulated that Father would receive 145 days of parenting time in the event that the trial court named Mother primary residential parent. *Pandey I*, at *1.

2

After the entry of the amended divorce decree, Father appealed to this Court and raised several issues for review. Specifically, he challenged the trial court's designation of Mother as the primary residential parent, the trial court's reduction of Father's parenting time from the originally stated 145 days, and the trial court's denial of Father's request that the minor child's passport be held in a safe deposit box. *Id.* at * 2-3. When we reviewed the matter on appeal, we observed that the trial court's orders contained "no factual findings regarding the comparative fitness of the parents[.]" *Id.* at *4. We also observed that there "was no mention of the best interest of [the minor child] or the statutory 'best interest' factors that should have controlled the trial court's decision." *Id.* Further, we noted that the "[t]rial court's orders did not provide any explanation for denying Father's request to have [the minor child's] passport be held in a safe deposit box, or for reducing his parenting time beyond the parties' previous stipulation." *Id.* at *6. As a result of these deficiencies, we concluded that we were unable to conduct a meaningful appellate review of the trial court's decision and remanded the matter for the trial court to enter an order that complied with the dictates of Tennessee Rule of Civil Procedure 52.01.[4] *Id.* at *3, 6. Our opinion in *Pandey I* was filed on February 22, 2013, and the mandate issued on April 29, 2013.

On July 1, 2013, after the case was remanded but prior to the trial court's compliance with the remand instructions, Mother filed a "Petition for Civil Contempt of Court, to Transfer Jurisdiction to Arkansas, and, in the Alternative, to Modify the Parenting Schedule." Therein, Mother asserted that Father was in contempt of court for failing to cooperate with her in renewing the minor child's passport despite being ordered to do so. Additionally, Mother contended that the parenting plan should be modified, and she requested that the modification proceeding be transferred to a court in Arkansas, where Mother had been living for approximately two years. Alternatively, in the event the trial court determined it retained jurisdiction, Mother prayed for a modification of Father's parenting time in accordance with her proposed parenting plan. Mother alleged that a modification of the parenting schedule was justified, in part, due to the difficulty the parties experienced in exchanging the minor child between Little Rock and Memphis. On July 26, 2013, Father filed a petition to modify his child support payments and requested a downward adjustment of his support obligations.

On November 6, 2013, the trial court entered its "Second Amended Final Decree of Divorce." The decree indicated that it was entered in order to correct certain errors identified by this Court in *Pandey I*, and it expressly stated that it was to replace the amended final decree that had been entered prior to the first appeal. Although the second amended divorce decree did not alter the prior designation of Mother as the primary

---

[4]In part, Rule 52.01 provides that, "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusion of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01.

residential parent or change the allocation of parenting time that was established in the first amended divorce decree, it did contain analysis responsive to this Court's instructions in *Pandey I*. In addition to containing a comparative fitness analysis of the parents and a thorough consideration of the minor child's best interests, the second amended divorce decree contained an explanation as to why the trial court awarded Father 140 days of parenting time a year as opposed to the 145 days provided by the parties' written stipulation. Moreover, the second amended divorce decree contained an explanation as to why the trial court denied Father's request that the minor child's passport be kept in a safe deposit box. The second amended divorce decree finalized all matters in connection with the initial divorce proceeding.

On November 20, 2013, the trial court entered an order adjudicating some of the matters Mother raised in her July 1, 2013 petition. In addition to denying Mother's request that Father be held in willful contempt, the trial court denied Mother's request that the modification proceeding be transferred to an Arkansas court. The trial court reserved Mother's request to modify the parenting schedule and Father's request to modify his child support payments for future adjudication.

On March 31, 2014, the trial court entered an order disposing of all outstanding issues from Mother's petition to modify the parenting schedule and Father's petition to modify his child support payment. In addition to modifying Father's child support obligation, the trial court found that a modification of the parenting schedule was in the minor child's best interest. Specifically, the trial court noted that the parties had experienced difficulties with the number of exchanges of the minor child under the previous parenting schedule. Although the trial court reduced Father's scheduled parenting time to 130 days per year, the trial court found that a restructured plan would allow fewer exchanges of the minor child while still providing Father with significant parenting time. An amended parenting plan implementing these objectives was entered contemporaneously with the order. On April 9, 2014, Father filed a notice of appeal.[5]

## II. Issues

Father raises three issues for our review, stated as follows:

1. The trial court's ruling designating Mother as primary residential parent is based on an erroneous application of the law and is contrary to the weight of the evidence presented at trial.

---

[5]Father's notice of appeal indicated that he was appealing the final judgment entered on March 31, 2014, as well as "all interlocutory orders entered by the Shelby County Chancery Court after [the] case was remanded by the Tennessee Court of Appeals."

2.  The trial court erred in arbitrarily reducing Father's parenting time with the minor child.

3.  The trial court erred in denying Father's request that the minor child's passport be held in a safe deposit box paid for by Father.

Mother raises several additional issues for our review, stated as follows:

1.  The trial court erred in its allocation of parenting time in light of the minor child's permanent relocation to Little Rock, Arkansas.

2.  The trial court erred in not finding Father in willful contempt of court by his failure to cooperate with Mother in renewing the minor child's United States passport.

3.  The trial court erred in declining to transfer all further proceedings in this matter to the circuit court of Pulaski County, Little Rock, Arkansas, now the home state of the child pursuant to Tenn. Code Ann. § 36-6-217(a)(1).

4.  Mother is entitled to an award of discretionary costs and attorney's fees in having to respond to Father's appeal since Father's appeal is friv[o]lous pursuant to Tenn. Code Ann. § 27-1-122 and because Mother is defending the trial court's determination that she be designated the primary residential parent of the minor child pursuant to Tenn. Code Ann. § 36-5-103(c).

## III. Standard of Review

In reviewing any findings of fact by the trial court, our review is *de novo* "upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review a trial court's conclusions on questions of law *de novo*, but no presumption of correctness attaches to the trial court's legal conclusions. *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

## IV.  Discussion

*Designation of Primary Residential Parent*

We first address Father's assertion that the trial court's designation of Mother as the primary residential parent was erroneous and contrary to the weight of the evidence

presented at trial. There are no hard and fast rules that apply in deciding custody disputes. *Taylor v. Taylor*, 849 S.W.2d 319, 327 (Tenn. 1993). Rather, "[c]ustody . . . determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves." *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn. Ct. App. 1996). "[T]he paramount concern of the trial court must be the welfare and best interest of the children." *Dobbs v. Dobbs*, No. M2011-01523-COA-R3-CV, 2012 WL 3201938, at *2 (Tenn. Ct. App. Aug. 7, 2012). In choosing to designate one parent over the other as the primary residential parent, the trial court must engage in a "comparative fitness" analysis. *Chaffin v. Ellis*, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006) (citing *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. 1983)). On appeal, we are reluctant to second-guess the trial court, as the decision to designate the primary residential parent is within its sound discretion. *Gaskill*, 936 S.W.2d at 631.

In challenging the trial court's designation of Mother as the primary residential parent, Father argues that the trial court erred in conducting the comparative fitness analysis contained within the second amended divorce decree. In addition to suggesting that the trial court improperly applied the law as it pertains to continuity of the minor child's life, Father contends that the trial court failed to consider the parties' respective willingness to foster the minor child's relationship with the other parent.

Having reviewed the record transmitted to us, we conclude that these grievances were not timely raised on appeal. "In an appeal as of right to the Supreme Court, Court of Appeals or Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from[.]" Tenn. R. App. P. 4. The thirty-day time limit for filing a notice of appeal is mandatory and jurisdictional in civil matters. *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004) (citing *Binkley v. Medling*, 117 S.W.3d 252, 255 (Tenn. 2003)).

Inasmuch as a portion of this appeal concerns issues connected to the initial divorce litigation, this thirty-day time limit was clearly not satisfied. The second amended divorce decree was entered by the trial court on November 6, 2013, and finalized all matters incident to the initial divorce proceeding. Nothing in the record indicates that Father filed a notice of appeal with respect to the November 6, 2013 order within thirty days after its entry. Indeed, the only notice of appeal filed post-remand was the notice of appeal filed on April 9, 2014. Although this notice indicated that Father was appealing the final judgment entered on March 31, 2014, as well as "all interlocutory orders entered by the Shelby County Chancery Court after [the] case was remanded[,]" the second amended divorce decree was not interlocutory in nature. The initial divorce litigation was one action; the litigation initiated by Mother's post-remand petition for contempt was another. In *Pandey I*, we assumed jurisdiction over the appeal, but we

6

ultimately remanded the matter based on our inability to conduct a meaningful appellate review of the case. The action that had been appealed, a divorce action, was remanded so that the trial court could enter an order explaining its previous decisions. As this Court previously noted in *Earls v. Earls*, No. M1999-00035-COA-R3-CV, 2001 WL 504905 (Tenn. Ct. App. May 14, 2001):

> Once the mandate reinvests the trial court's jurisdiction over a case, the case stands in the same posture it did before the appeal except insofar as the trial court's judgment has been changed or modified by the appellate court. The appellate court's opinion becomes the law of the case, foreclosing and excluding any complaint, constitutional or otherwise, as to the issues addressed and decided in the appellate court's opinion. Thus, **the trial court does not have the authority** to modify or revise the appellate court's opinion, or **to expand the proceedings beyond the remand order**. **The trial court's sole responsibility is to carefully comply with directions in the appellate court's opinion**.

*Earls*, 2001 WL 504905, at *3 (internal citations omitted) (emphasis added). Within the context of the civil action that we remanded to the trial court, the trial court was only authorized to enter orders explaining its actions incident to the divorce.

When Mother filed her petition to modify the parenting schedule and Father filed his petition to modify child support, these petitions constituted part of a new, independent civil action, separate from the divorce case that we remanded. So, too, did Mother's petition for civil contempt.[6] The fact these matters were still pending at the time the second amended divorce decree was entered did not prevent the divorce from becoming final. The post-remand petitions commenced a post-divorce action distinguishable from the original divorce litigation. Father's failure to timely appeal matters related to the initial divorce proceeding deprives this Court of jurisdiction to entertain Father's appeal.[7]

---

[6]Contempt is a *sui generis* proceeding and "is considered incidental to the case out of which it arises[.]" *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 474 (Tenn. 2003) (citations omitted).

[7]Although Father's April 9, 2014 notice of appeal ostensibly treats the second amended divorce decree as an interlocutory order, we note that Father's counsel previously seemed to acknowledge his obligation to appeal the second amended divorce decree within thirty days from its entry. On November 6, 2013, the same day the trial court entered the second amended divorce decree, the trial court discussed potential dates for a hearing on Mother's petition to modify the parenting plan. When asked if December 16, 2013 would be an acceptable date for the hearing, Father's counsel responded as follows:

> Your Honor, the problem with December 16th, any date past the 5th of December is more than 30 days from the entry of the order you just entered today, and this case may be on appeal. So I would like to try to resolve this issue before I have to file a notice of appeal removing [the case.]

*Allocation of Parenting Time and Jurisdiction of Proceedings*

Father's second issue for review asserts that the trial court erred by arbitrarily reducing his parenting time on a number of occasions. In addition to challenging the trial court's allocation of parenting time incident to its entry of the second amended divorce decree, Father asserts that the trial court erred in reducing his parenting time under the March 31, 2014 order. To the extent that Father asserts the trial court erred in allocating parenting time incident to its entry of the second amended divorce decree, we conclude that we are without jurisdiction to review his concerns. As already explained, the second amended divorce decree constituted a final judgment within the context of the initial divorce proceeding. Father's failure to initiate an appeal within thirty days of its entry operates as a bar to our review of matters adjudicated therein.

With that said, Father did initiate a timely appeal with respect to the trial court's modification of his parenting time in its March 31, 2014 order. In his appellate brief, Father specifically argues that the trial court erred in reducing his parenting time from 140 days a year to 130 days a year. Incidentally, Father is not the only party to take issue with the trial court's modification of parenting time pursuant to the March 31, 2014 order. Mother also raises the trial court's reduction of Father's parenting time as an issue for our review. Of course, Mother's challenge is of a different ilk than Father's. Rather than contesting the legitimacy of modifying the allocation of parenting days, Mother asserts that the trial court should have reduced Father's parenting time more than it did.

Before we can consider the propriety of the trial court's March 31, 2014 modification order, we must first address the preliminary question of whether the trial court properly exercised jurisdiction over Mother's petition to modify the parenting schedule. Despite acknowledging that Tennessee was the proper venue to make the original custody determination for the parties' child, Mother contends that the trial court should not have exercised jurisdiction to modify the parenting plan. According to her, the trial court should have transferred the case to Arkansas. Having reviewed the record, we cannot conclude that the trial court erred in declining to transfer the case.

"The concept of subject matter jurisdiction implicates a court's power to adjudicate a particular type of case or controversy." *Staats v. McKinnon*, 206 S.W.3d 532, 541-42 (Tenn. Ct. App. 2006) (citations omitted). In Tennessee, jurisdiction between our state and other states over child custody proceedings is governed by the Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA"). *Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006). "Whether a court has jurisdiction is a question of law over which our review is de novo with no presumption of the correctness of the ruling of the lower courts." *Id.* (citation omitted).

8

Under the UCCJEA, the court that made the initial custody determination "retains exclusive, continuing jurisdiction over the matter unless certain contingencies are met." *Iman v. Iman*, No. M2012-02388-COA-R3-CV, 2013 WL 7343928, at *4 (Tenn. Ct. App. Nov. 19, 2013) (citing Tenn. Code Ann. § 36-6-217(a)). The statute specifically provides as follows:

> (a)    Except as otherwise provided in § 36-6-219, a court of this state which has made a child-custody determination consistent with this part has exclusive, continuing jurisdiction over the determination until:
> (1)    A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
> (2)    A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Tenn. Code Ann. § 36-6-217(a) (2014). As the trial court made the initial custody determination in this case, it retained exclusive, continuing jurisdiction absent the occurrence of one of the statutory triggers provided for in Tennessee Code Annotated § 36-6-217(a)(1) and (2). Pursuant to the terms of the UCCJEA, jurisdiction attaches at the commencement of a proceeding. *Iman*, 2013 WL 7343928, at *4; *Busler v. Lee*, No. M2011-01893-COA-R3-CV, 2012 WL 1799027, at *2 (Tenn. Ct. App. May 17, 2012). Because the commencement of a proceeding is statutorily defined as the date of the filing of the first pleading, Tennessee Code Annotated § 36-6-205(5) (2014), we must focus on whether the trial court retained jurisdiction as of July 1, 2013, the date Mother filed her petition to modify.

Because Father still resided in Tennessee as of July 1, 2013, Tennessee's exclusive, continuing jurisdiction did not terminate under the criterion set forth in Tennessee Code Annotated § 36-6-217(a)(2). Whether it terminated under the criterion set forth in Tennessee Code Annotated § 36-6-217(a)(1) requires us to consider whether the parties' child has a significant connection with the state and whether substantial evidence is still available in the state concerning his care. On appeal, Mother notes that the parties' child has primarily been living with her in Little Rock since 2011 and argues that Arkansas is the appropriate forum for adjudication of her modification petition. In support of her argument, she suggests that this case is analogous to *Lee v. Lee*, No. W2003-01053-COA-R3-CV, 2004 WL 3021107 (Tenn. Ct. App. Dec. 29, 2004). In *Lee*, this Court considered whether Tennessee had subject matter jurisdiction over a father's petition to modify custody. The parties' child in that case was born in Tennessee in 1994,

9

but in 1996, the mother moved with the child to California after the parties' marriage deteriorated. *Id.* at \*1. The child's mother filed for divorce in Tennessee the same year she relocated to California. *Id.* After a bench trial, the Tennessee trial court ultimately entered a custody order in favor of the mother. *Id.* In 2001, the father in *Lee* filed a petition to change custody. *Id.* The trial court determined that it did not have continuing jurisdiction to hear the father's petition, and when the matter came before this Court in 2004, we affirmed. *Id.* at \* 3-4. In *Lee*, the child had been living in California since 1996 and still resided there as of the time of the 2004 appeal. Moreover, although the father exercised visitation with the child, the visitation occurred "**primarily** in California." *Id.* at \*5 (emphasis added).

In *Lee*, it was clear that the minor child did not retain a significant connection to Tennessee. As noted, the father's visitation with the child occurred primarily in California, and when we reviewed the record on appeal, we concluded that it did "not contain any evidence of any current connection between the child and this state other than that his father lives here." *Id.* While the underlying facts in *Lee* did not support a finding warranting the exercise of continuing jurisdiction, the facts in this case do. The child in this case has significant connections with Tennessee. Under the parenting plan in effect prior to the trial court's March 31, 2014 modification order, Father was afforded 140 days of parenting time every year. In practical terms of the child's day-to-day schedule, this plan awarded Father parenting time every weekend except the last weekend of each month. Moreover, the record indicates that Father exercised his parenting time with the child in Tennessee.[8] Based on the amount of time the child spent in this state, we cannot conclude that the child's relationship with Tennessee has become so attenuated that the trial court no longer possessed exclusive, continuing jurisdiction.[9]

Because we conclude that the trial court properly exercised jurisdiction with respect to Mother's petition to modify, we now review whether it erred in reducing Father's parenting time from 140 days per year to 130 days per year. Under Tennessee

---

[8]We note that in Mother's petition to modify, Mother alleges that Father missed five of his parenting days with the child "[f]or the past calendar year[.]" Although the record does not reflect a specific finding with respect to this allegation, even if true, the child retained a significant connection to Tennessee. In addition to the standard day-to-day schedule, Father exercised parenting time with the child over specified holiday and vacation periods.

[9]Although a court retaining continuing, exclusive jurisdiction "may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum[,]" Tennessee Code Annotated § 36-6-222 (2014), Mother did not properly raise this as an issue for our review on appeal. Although Mother attempted to briefly litigate the inconvenient forum issue under Tennessee Code Annotated § 36-6-222 in the trial court, she has not raised that statute and issue in her brief. An issue that is not expressly raised in an appellant's statement of the issues may be considered waived. *Champion v. CLC of Dyersburg, LLC*, 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011) (citing *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 392 (Tenn. Ct. App. 2009)).

law, the modification of an existing parenting arrangement is essentially a two-step process. *In re Jalin M.B.*, No. E2013-00635-COA-R3-JV, 2014 WL 1052094, at *7 (Tenn. Ct. App. Mar. 19, 2014), *no perm. app. filed*. First, the trial court must determine whether a material change in circumstance has occurred. *Id.* (citing Tenn. Code Ann. § 36-6-101(a)(2)(B), (C)). If the trial court determines a material change in circumstance has occurred, the trial court must then determine whether the modification of the existing parenting arrangement is in the minor child's best interest. *Id.* The standard for determining whether a "material change in circumstance" has occurred depends on whether a parent is seeking to modify custody or modify the residential parenting schedule. *Id.* When a parent seeks to modify the residential parenting schedule, as Mother has in this case, a lower threshold applies. *Id.* For purposes of modifying a residential parenting schedule, a material change of circumstance may include the following:

> [S]ignificant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(C) (2014).

Having reviewed the record transmitted to us on appeal, we discern no error in the trial court's decision to modify the parties' parenting schedule. Before the parenting schedule was modified by the trial court's March 31, 2014 order, Father generally exercised his parenting time in Memphis every weekend except the last weekend of each month.[10] Mother sought to modify this arrangement, in part, due to the difficulties the parties experienced in exchanging the minor child between Little Rock and Memphis. Significant construction apparently plagued the interstate route between the two cities, and according to Mother's testimony, the accompanying delays often resulted in the parties' child spending substantial amounts of time on the road. She testified that it was not uncommon for the child to spend "five to six hours in the car on a Friday and around the same time on a Sunday." When there was a traffic jam, she claimed the child could be in the car as long as nine hours. In addition to these traffic concerns, Mother sought to modify the parenting schedule to provide the child with more weekend days in Little Rock so he could participate in extracurricular activities with his friends. As she outlined in her petition to modify, the parties' child had aged two years since the time of the divorce trial, and she wanted him to become more involved in the Little Rock community on weekends. She initially proposed reducing Father's parenting time by approximately

---

[10]Of course, in addition to this basic schedule, Father exercised parenting time over specified holiday and vacation periods.

sixty days a year in order to reduce the amount of travel time and number of exchanges required for the child, but she later proposed that Father's time be reduced by only twenty days. Although Father certainly did not agree with Mother's plan to reduce his parenting time by up to sixty days a year, we note that he did not mount any opposition to Mother's general desire to restructure the parenting schedule. In fact, when the matter was discussed briefly for the first time at the November 6, 2013 hearing, Father's counsel stated as follows: "I know it's a long drive. I know there's a better way to do this schedule for this child[.]" Father proposed keeping his parenting time at 140 days a year but allocating the time in such a way that the travel schedule could be reduced. As opposed to the existing plan which resulted in the child visiting Memphis three to four weekends a month, Father's plan proposed that his parenting time be exercised two weekends per month. In order to effectuate this modification, Father suggested that he receive the majority of the parenting time during the child's summer vacation.

After Mother expressed concern that Father's plan would keep her apart from their child during the summer, Father indicated that he was willing to give Mother a couple of weeks of overnight visitation in the summer if she wanted it. When asked by Mother's counsel how this would impact the overall calculation of days in his proposed plan, Father replied as follows:

> There can be various ways to do cooperation. We can keep the same number of days or even if it is 130 days it doesn't matter to me because – the thing is I am willing to share the child with mother. On the contrary, mother is trying to cut my time.

As Mother's counsel cross-examined Father on the subject further, Father's testimony continued to indicate that he was willing to be flexible for the best interest of the parties' child:

> Q: Okay. . . . So you're saying, if I understand, that you would be willing to reduce your number of days by 14 days to give mother two weeks of summer parenting time; is that correct?
>
> A: Yeah. And for instance we can adjust the schedule so that we keep the higher framework the same at 140 days, but if there is a need to reduce a few days, that's fine, a few days here and there doesn't make much difference.
>
> Q: Okay. Let me try it again, yes or no. Are you testifying that you would be willing to reduce your number of parenting days from 140 days to 14 days less than that to give mother two more weeks of parenting time?

A: If I have to I can reduce it, but for instance again the time has been reduced significantly already, so my preference would be it's in the best interest of the child to keep the same order as it was approved by the Court before and keep the same allocation of the number of days as much as possible. But if we have to reduce the number of days, that's fine, I don't object to it.

It is no surprise that the trial court felt it necessary to modify the parenting schedule in light of the parties' representations and the difficulties that existed between the two in exchanging the child between Little Rock and Memphis. In its March 31, 2014 order that modified the parenting schedule, the trial court found as follows:

Mother has demonstrated a material change in circumstances since the entry of the Amended Permanent Parenting Plan Order on November 10, 2011, which makes a modification of the existing plan and schedule in the minor child's best interest. The Court specifically finds that the parties have experienced difficulties with the number of exchanges of the minor child in Brinkley, Arkansas while Mother resides in Little Rock, Arkansas and Father resides in Memphis, Tennessee, due to weather conditions and road construction. The Court specifically finds that the Father's parenting time will be restructured to reduce the number of exchanges with the minor child without substantially reducing Father's parenting time with the minor child. The Court finds that One Hundred Thirty (130) days of parenting time, meaning overnights with the minor child and Father, provides Father with significant parenting time with the minor child and allows fewer exchanges of the minor child. The Court finds that the Second Amended Permanent Parenting Plan Order, entered contemporaneously with the entry of this order, provides a schedule that is in the minor child's best interest because it allows Father to maintain significant and meaningful time with the minor child while reducing the number of exchanges of the minor child since the parents live in different states.

Having reviewed the record transmitted to us, we conclude that the evidence does not preponderate against the trial court's determination that a material change in circumstance occurred. Moreover, the evidence does not preponderate against the trial court's determination that a modification of the parenting plan was in the minor child's best interest. As already indicated, there was no disagreement between the parties that the parenting schedule should be restructured in order to reduce the number of exchanges between Little Rock and Memphis. Although each party suggested different ways the trial court could modify the parenting schedule, both parties actively proposed plans that

sought to decrease the amount of time the child spent traveling back and forth between the two cities. Prior to the modification, the child generally traveled to visit Father in Memphis every weekend except the last weekend of each month. Under the Second Amended Permanent Parenting Plan Order that was entered in connection with the trial court's March 31, 2014 order, Father was awarded visitation with the child more or less every other weekend during the school year. This modification is consistent with the trial court's attempt to reduce the number of exchanges required between Little Rock and Memphis.

In this vein, we reject both parties' specific concerns with the modified parenting schedule. Whereas Father complains that his residential parenting days were decreased from 140 days a year to 130 days a year, Mother asserts the trial court erred in not reducing Father's days more than it did. As the Tennessee Supreme Court explained in *Armbrister v. Armbrister*, 414 S.W.3d 685 (Tenn. 2013), "the specific modifications a trial court adopts to address a material change in circumstances and to serve the best interests of children are the kinds of details an appellate court should not 'tweak' absent an abuse of discretion." *Id.* at 706 (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001)). "A trial court abuses its discretion in establishing a residential parenting schedule 'only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record.'" *Id.* at 693 (quoting *Eldridge*, 42 S.W.3d at 88). Because we cannot say that the trial court's ruling falls outside the spectrum of reasonableness, we discern no abuse of discretion on its part.

*Restrictions on the Minor Child's Passport*

We next address Father's assertion that the trial court erred in denying his request that the minor child's passport be held in a safe deposit box paid for by Father. This issue, which is related to the initial divorce proceeding, challenges the sufficiency of the restrictions the trial court placed on the child's passport in the second amended divorce decree. Therein, the trial court held as follows:

> [T]he minor child's passport is restricted by this Second Amended Final Decree of Divorce in that neither party can travel with the child internationally without either the written permission of the other parent or an order of the Court. . . . The Court does not find any evidence that either parent has or would violate the orders of the Court and remove the minor child from the United States in violation of the Court's order; therefore the Court declines to craft any further extraordinary procedures regarding the possession of the child's passport.

14

Although Father presently seeks to attack the trial court's order for its failure to place additional restrictions, we conclude that we are without jurisdiction to review the issue. As noted, the trial court's ruling regarding restrictions on the child's passport was memorialized in the second amended divorce decree. That decree finalized all matters incident to the initial divorce proceeding. Father's failure to file a notice of appeal within thirty days of its entry prevents this Court from reviewing any matters adjudicated therein.

*Contempt*

Mother also asserts that the trial court erred in not finding Father to be in willful contempt of court for his alleged failure to cooperate with Mother in renewing the minor child's passport. The hearing on the petition for contempt occurred on November 6, 2013, and on November 20, 2013, the trial court entered an order declining to find Father in contempt. In pertinent part, the trial court found as follows:

> [T]here was a miscommunication between Mother and Father regarding cooperating in renewing the minor child's passport which was not willful; however, the Mother's request that Father cooperate immediately in renewing the minor child's passport is granted and the Court orders Father to sign the passport renewal documents immediately and in the presence of the Court.

A "[c]ivil contempt occurs when a person does not comply with a court order and an action is brought by a private party to enforce rights under the order that has been violated." *Doe v. Bd. of Prof'l Responsibility*, 104 S.W.3d 465, 473 (Tenn. 2003) (citations omitted). The corresponding punishment "is designed to coerce compliance with the court's order and is imposed at the insistence and for the benefit of the private party who has suffered a violation of rights." *Id.* (citations omitted). "The quantum of proof needed to find that a person has actually violated a court order is a preponderance of the evidence." *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 356 (Tenn. 2008) (citation omitted).

In this case, we discern no error in the trial court's decision to not hold Father in civil contempt. Notwithstanding the trial court's finding that Mother and Father had miscommunicated regarding the minor child's passport, we note that Mother failed to put on any formal proof concerning the contempt charge at the November 6, 2013, hearing. Having carefully reviewed the transcript from that proceeding, we observe that Mother's presentation consisted entirely of argument from her counsel. Even assuming, *arguendo*, that the representations of Mother's counsel demonstrated willful noncompliance on the part of Father, such a fact is insufficient to hold him in contempt. "Statements of counsel

15

are not evidence or a substitute for testimony[.]" *Hathaway v. Hathaway*, 98 S.W.3d 675, 681 (Tenn. Ct. App. 2002) (citations omitted). Here, it was clear that a dispute existed between the parties regarding Father's level of cooperation in renewing the minor child's passport. Whereas Mother's counsel told one story, Father's counsel conveyed another. It would have been inappropriate for the trial court to resolve such a dispute on the statements of Mother's counsel alone. Again, "mere statements of counsel are not evidence or a substitute for testimony." *Metro. Gov't of Nashville & Davidson County v. Shacklett*, 554 S.W.2d 601, 605 (Tenn. 1977). We accordingly affirm the trial court on this issue.[11]

### Attorney's Fees and Costs

Finally, we address Mother's contention that she is entitled to an award of costs and attorney's fees pursuant to Tennessee Code Annotated § 27-1-122, or alternatively, to an award of attorney's fees pursuant to Tennessee Code Annotated § 36-5-103(c). An award of damages pursuant to Tennessee Code Annotated § 27-1-122 may be made "against parties whose appeals are frivolous or are brought solely for the purpose of delay." *Young v. Barrow*, 130 S.W.3d 59, 66 (Tenn. Ct. App. 2003) (citation omitted). The decision to award these damages is a discretionary one. *Id.* at 66-67. Damages pursuant to Tennessee Code Annotated §36-5-103(c) are available as follows:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is

---

[11]We note that Mother's brief also appears to connect the trial court's alleged error regarding the civil contempt charge to the hearing conducted on February 10, 2014. During that hearing, Mother's counsel stated that the minor child still did not have a passport and alleged that this was a result of Father's withdrawal of consent from a form submitted to the passport authority. In light of the concerns raised, the trial court orally ruled that Father should produce whatever consent was necessary for the minor child to receive a passport. This ruling was memorialized in the trial court's March 31, 2014 order. Despite the suggestion in Mother's brief that the trial court should have held Father in contempt based on his alleged withdrawal of consent, we cannot conclude that the trial court erred. As previously discussed, the contempt charge was adjudicated by way of the trial court's November 20, 2013 order. Although Mother raised her concerns that a passport had still not been obtained as of the date of the February 10, 2014 hearing, we note that Mother did not ask the trial court to hold Father in contempt based on these new concerns. This fact countenances against any conclusion that the trial court should have held Father in contempt for conduct subsequent to the November 20, 2013 court order.

pending, in the discretion of such court.

Tenn. Code Ann. § 36-5-103(c) (2014).  As we have previously recognized, this statute also applies to awards of attorney fees that are incurred on appeal.  *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008) (citation omitted).  Exercising our discretion, we decline to award Mother attorney's fees incurred on appeal pursuant to either cited statutory basis.

## V.  Conclusion

Given Father's failure to initiate a timely appeal with respect to the second amended divorce decree, we conclude we are without jurisdiction to review the following issues adjudicated therein: the trial court's designation of Mother as the primary residential parent, the trial court's allocation of parenting time, and the sufficiency of the trial court's restrictions on the minor child's passport.  With respect to the other issues raised for our review, we discern no error on the part of the trial court.  We conclude that the trial court retained exclusive, continuing jurisdiction over Mother's petition to modify, and on review of the record, we affirm its order modifying the parties' parenting schedule.  We also affirm the trial court's refusal to find Father in civil contempt.  Exercising our discretion, we decline to award Mother any attorney's fees incurred on appeal.  Costs on appeal are assessed one-half against the Mother, Soumya Pandey, and one-half against the Father, Manish Shrivastava, and his surety, for which execution may issue if necessary.  This matter is remanded to the trial court for enforcement of the judgment, the collection of costs, and further proceedings as may be necessary and consistent with this Opinion.

_____
BRANDON O. GIBSON, JUDGE