IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 26, 2011 Session

## PAMELA CHAMPION, ET AL. v. CLC OF DYERSBURG, LLC, ET AL.

**Direct Appeal from the Circuit Court for Dyer County**
**No. 07-68     Lee Moore, Judge**

**No. W2010-01228-COA-R3-CV - Filed February 22, 2011**

The trial court awarded Defendant summary judgment on the basis that Defendant had negated the element of damages in this personal injury action. We reverse and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

DAVID R. FARMER, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and HOLLY M. KIRBY, J., joined.

Les Jones and Frank B. Thacher, III, Memphis, Tennessee, for the appellant, Pamela Champion.

John G. Wheeler and L. Bradley Dillard, Tupelo Mississippi, for the appellee, CLC of Dyersburg, LLC d/b/a Oakwood Community Living Center, Inc.

## OPINION

This lawsuit arises from the discovery of maggots in a wound of a hospice care patient at the Oakwood Community Living Center, Inc. ("Oakwood"), a facility owned by Defendant CLC, LLC ("CLC"). Decedent Christine Johnson (Ms. Johnson) was a resident of Oakwood from January 2002 through September 28, 2006. In September 2006, she was 80 years of age, terminally ill, and had developed decubitus ulcers. She was admitted to hospice care at Oakwood on September 12, 2006. On September 18, 2006, nurses at Oakwood discovered maggots in an ulcer while changing the bandage on Ms. Johnson's foot. The ulcer was irrigated to remove the maggots, and Ms. Johnson was transferred to a Dyersburg hospital. Ms. Johnson died that day of causes unrelated to the maggots.

In May 2007, Ms. Johnson's daughter, Pamela Champion (Ms. Champion), filed a personal injury action individually and on behalf of her mother and other beneficiaries against Oakwood, CLC, and Community Eldercare, LLC ("Community Eldercare"; collectively, "Defendants"). In her complaint, Ms. Champion asserted 19 allegations of negligence, and sought recovery for mental anguish, physical and mental pain and suffering, and medical bills. She also asserted that Defendants' "consciously indifferent actions with regard to the welfare and safety of helpless patients such as Ms. Christine Johnson constitute[d] gross negligence, willful, wanton, reckless, malicious and/or intentional misconduct" and prayed for an award of compensatory and punitive damages.

Defendants filed an answer denying Ms. Champion's allegations and asserting 24 specific defenses. In October 2009, Defendants moved for summary judgment on the grounds that Ms. Champion had failed to offer evidence "to demonstrate that the maggots caused any actual harm, or that Ms. Johnson suffered any conscious pain and suffering or was even aware of the presence of maggots." Defendants further asserted that Community Eldercare should be dismissed where it is a management company that does not operate CLC or employ any individuals at CLC. Following a hearing on Defendants' motion on April 5, 2010, Ms. Champion conceded that Community Eldercare should be dismissed as a party. By order entered April 15, 2010, the trial court dismissed Community Eldercare as a party, and awarded summary judgment to Defendants on the basis that Defendants had "negated an essential element of the Plaintiff's claims (i.e., damages)." The trial court determined that the award of summary judgment on the basis of damages mooted Ms. Champion's claim for punitive damages. Ms. Champion filed a timely notice of appeal to this Court.

### *Issues Presented*

Ms. Champion raises the following issues for our review:

(1)    Is the loss of flesh an "injury" for which recovery can be had under Tennessee law?

(2)    Did the trial court err in finding that Defendants, in their motion for summary judgment, shifted the burden of production to Plaintiff?

(3)    Did the trial court err in finding that Plaintiff put forward no evidence of any injury or damages sustained by Christine Johnson?

The issue presented by this appeal, as we perceive it, is whether CLC affirmatively negated the element of injury so as to support an award of summary judgment where it is undisputed that maggots were found in a wound on Ms. Johnson's foot while she was a

-2-

hospice care patient in a facility owned and operated by CLC.

## Standard of Review

We review a trial court's award of summary judgment *de novo*, with no presumption of correctness, reviewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted). Summary judgment is appropriate only where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* at 83 (quoting Tenn. R. Civ. P. 56.04). The burden is on the moving party to demonstrate that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Id.* (citations omitted).

After the moving party has made a properly supported motion, the nonmoving party must establish the existence of a genuine issue of material fact. *Id.* (citations omitted). To satisfy its burden, the nonmoving party may: (1) point to evidence of over-looked or disregarded material factual disputes; (2) rehabilitate evidence discredited by the moving party; (3) produce additional evidence that establishes the existence of a genuine issue for trial; or (4) submit an affidavit asserting the need for additional discovery pursuant to Rule 56.06 of the Tennessee Rules of Civil Procedure. *Id.* (citations omitted). The court must accept the nonmoving party's evidence as true, resolving any doubts regarding the existence of a genuine issue of material fact in that party's favor. *Id.* (citations omitted). A disputed fact that must be decided to resolve a substantive claim or defense is material, and it presents a genuine issue if it reasonably could be resolved in favor of either one party or the other. *Id.* (citations omitted). With this standard in mind, we turn to whether the trial court erred by awarding summary judgment in this case.

## Discussion

As an initial matter, we note that Ms. Champion appears to have abandoned her claim for damages arising from medical expenses. Although this claim does not appear to have been addressed in the summary judgment proceedings in the trial court, the trial court awarded summary judgment on the issue of damages and dismissed all remaining claims. Ms. Champion has not raised dismissal of her claim for medical expenses as an issue on appeal. An issue not raised in an appellant's statement of the issues may be considered waived. *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 392 (Tenn. Ct. App. 2009). We accordingly turn to whether the trial court erred in awarding summary judgment to CLC with respect to Ms. Champion's claim for non-economic damages.

Although pain and suffering, permanent impairment and/or disfigurement, and loss of enjoyment of life are "encompassed within the general rubric of pain and suffering," each of them represents "separate and distinct losses." *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 715 (Tenn. Ct. App. 1999)(citations omitted). Pain and suffering, moreover, is comprised of both physical and mental discomfort. "It includes the 'wide array of mental and emotional responses' that accompany the pain, characterized as suffering." *Id.* (quoting *McDougald v. Garber*, 132 Misc.2d 457, 504 N.Y.S.2d 383, 385 (N.Y. Sup. Ct.1986)(citing See Charles T. McCormick, Damages § 88, at 315 (1935))).

A permanent injury is one from which the injured person will not recover completely, and which prevents him from living in comfort or adds inconvenience or loss of physical capacity. *Id.* A permanent injury may be physical, emotional, or psychological. *Id.* Disfigurement is a type of permanent injury that impairs the injured person's beauty, symmetry, or appearance. *Id.*

We begin our discussion of the summary judgment award in this case emphasizing that, in order to prevail on a motion for summary judgment in Tennessee, "[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shut up' or even to cast doubt on a party's ability to prove an element at trial." *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8 (Tenn. 2008). Rather,

> a moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either: (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial.

*Id.* at 8-9.

Upon review of the record in this case, we observe that, in its motion for summary judgment, CLC stated that the testimony proffered by Ms. Champion's medical expert, Dr. Amelia Kiser (Dr. Kiser), "failed, when taken in combination with the deposition testimony of hospice nurse Marie Simmons and CLC employee Patricia Brady, to demonstrate that the maggots caused any actual harm, or that Ms. Johnson suffered any conscious pain and suffering or was even aware of the presence of the maggots." Although "summary judgment may be appropriate for the moving party who relies upon evidence from the nonmoving party," the moving party may rely on that evidence

> only if [it] affirmatively negates an essential element of the nonmoving party's claim or shows that the nonmoving party cannot prove an essential element of the claim at trial. The moving party may not, however, merely point to

omissions in the nonmoving party's proof and allege that the nonmoving party cannot prove the element at trial.

*Id.* at 10. At the summary judgment stage, the burden is not on the nonmoving party to prove its claim, but on the moving party to affirmatively negate it. *See id.* We must agree with Ms. Champion that, in its initial motion, CLC offered no proof to affirmatively negate the element of damages for the purposes of summary judgment. It merely asserted that Dr. Kiser's testimony did not affirmatively establish that Ms. Johnson suffered pain as a result of the maggots present in her wound.

CLC proffered no expert testimony in support of its motion for summary judgment until it responded to Ms. Champion's opposition to its motion. On March 1, 2010, CLC filed a "Rebuttal in Support of Motion for Summary Judgment" to which it attached the affidavit of its expert, Dr. Elbert Edwin Hines, III (Dr. Hines). Dr. Hines' affidavit was notarized on February 23, 2010. The portion of Dr. Hines' affidavit relating to the presence of maggots in Ms. Johnson's wound reads, in totality:

> Based on the documentation and records which I have reviewed in this cause, as well as my experience, education and training, it is my opinion to a reasonable degree of medical probability that Ms. Johnson was never aware of the presence of the maggots, and she experienced no pain, discomfort, itching or loss of dignity as a result of the maggots being present.

> Based on the documentation and records which I have reviewed in this cause, as well as my experience, education an training, it is my opinion to a reasonable degree of medical probability that the maggots were only present on dead or necrotic tissue, and that no evidence exists to demonstrate that the maggots were present on live tissue or caused any actual damage or harm to Ms. Johnson.

CLC also attached Ms. Johnson's medication administration record for the month of September 2006 to its rebuttal. According to that record, Ms. Johnson received the pain medication Loritab on September 16 and 18, and Tylenol on September 17, 2006.

The parties do not dispute that maggots generally cause itching and discomfort. Additionally, CLC does not assert that the presence of maggots in a wound generally would cause some mental or emotional response. Rather, CLC's argument, as we perceive it, is that Ms. Johnson suffered no physical or mental injury because she was terminally ill, unable to communicate verbally, and did not exhibit signs of pain.

Upon review of the entirety of the record, we are not convinced that CLC has negated the element of injury under the standard established by *Hannan v. Alltel Publishing*. First, we note that Dr. Hines' affidavit does not establish that he is an expert with respect to mental, emotional, or psychological health. Second, we note that CLC does not dispute Dr. Kiser's testimony that Loritab was administered to Ms. Johnson for pain, and that Ms. Johnson "must have shown some symptoms of pain. . . . they gave her pain medication those days." It is undisputed that Ms. Johnson's physical condition rendered her incapable of oral communication. Patricia Brady (Ms. Brady), the L.P.N. who assisted with the changing of Ms. Johnson's bandage and discovered the maggots, testified by deposition that, although Ms. Johnson could not communicate verbally, she could understand oral commands and respond to pain. Ms. Brady testified that Ms. Johnson did not appear to be in physical pain, and that she did not watch the irrigation process used to clean the wound. She also testified that she did not recall whether Ms. Johnson's eyes were open or closed. Maude Marie Simmons (Ms. Simmons), a hospice-certified R.N. who also was present during the process of irrigating the maggots from the wound on Ms. Johnson's foot, testified that Ms. Johnson was semi-comatose and was able to respond to tactile stimuli by opening her eyes or sometimes by moving her "right upper extremity." When asked whether she "ha[d] any reason to believe that [Ms. Johnson] was aware to the presence of maggots in that wound," Ms. Simmons replied that she "honestly [couldn't] say." Dr. Kiser's testimony is similarly inexact with respect to whether Ms. Johnson experienced mental or physical discomfort. Dr. Kiser testified, however, that there was no evidence or physical data to prove that Ms. Johnson felt pain as a result of the maggots, but that based on her training, she believed "people are aware of things they can't verbalize."

We do not believe Dr. Hines' testimony affirmatively negates the element of injury in this case. Although Dr. Hines testified that Ms. Johnson experienced no pain, Dr. Hines did not treat Ms. Johnson, was not personally familiar with her, and did not specify facts on which he based his conclusion. Assuming that Dr. Hines reviewed the remainder of the evidence in the record now before us, there is nothing in that record to affirmatively negate the element of injury. We must agree with Ms. Champion that Dr. Hines' opinion is conclusory and are neither based on nor supported by identified facts as required for summary judgment under *Hannan v. Alltel*. Additionally, there is no dispute that Ms. Johnson was somewhat conscious and capable of experiencing some degree of pain and mental, emotional and psychological anguish and distress, notwithstanding her inability to communicate verbally. There is nothing in this record to demonstrate that Dr. Hines is an expert with respect to those elements of injury. *See Weaver v. Pardue*, No. M2010-00124-COA-R3-CV, 2010 WL 4272687, at *8-9 (Tenn. Ct. App. Oct. 28, 2010)(stating, that doctor's affidavit did not demonstrate that he "possessed the requisite knowledge and expertise to offer an opinion on whether his alleged conduct caused the alleged injury.").

### *Holding*

In light of the foregoing, we reverse the award of summary judgment to CLC. This matter is remanded to the trial court for further proceedings. Costs of this appeal are taxed to the Appellee, CLC of Dyersburg, LLC.


_____
DAVID R. FARMER, JUDGE