IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 27, 2015 Session

## CHRISTOPHER MICHAEL RIGSBY v. MARCY LEANNE RIGSBY

**Appeal from the Circuit Court for Hamilton County**
**No. 12D2501     Jacqueline S. Bolton, Judge**

_____

**No. E2014-02095-COA-R3-CV-FILED-NOVEMBER 25, 2015**

_____

In this divorce case, the trial court entered a final decree of divorce based upon the sole statutory ground of irreconcilable differences, adopting and approving the parties' signed and notarized marital dissolution agreement and signed temporary parenting plan. The trial court subsequently entered two different parenting plans, designating the second plan as the permanent parenting plan. The mother has appealed the entry of the subsequent parenting plans. Determining that the trial court lacked authority to enter a temporary parenting plan concomitant with a final decree of divorce, we vacate the later plans and reinstate the original temporary parenting plan, designating it to be the controlling permanent parenting plan in this action.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Vacated; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

C. Nicole Benjamin and Cathy Allshouse, Chattanooga, Tennessee, for the appellant, Marcy Leanne Rigsby.

Michele L. Coffman and Kathryn M. Russell, Chattanooga, Tennessee, for the appellee, Christopher Michael Rigsby.

**OPINION**

**I. Factual and Procedural Background**

This case involves the dissolution of a marriage of approximately twenty years' length. Four children were born of the marriage: a son, who was seventeen at the time of the final hearing in August 2014 and will have reached the age of eighteen during the pendency of this appeal; two other sons, who were ages eleven and eight, respectively; and a daughter, who was seven (collectively, "the Children").

Christopher Michael Rigsby ("Father") filed a complaint for divorce against Marcy Leanne Rigsby ("Mother") on December 10, 2012. Parenting issues and the payment of the mortgage regarding the marital residence were primary sources of contention during the pendency of the divorce proceedings. Upon Father's motions, the trial court reserved for final hearing the issue of whether to order the marital residence sold while ordering that Mother be responsible for mortgage payments in the interim. Following a hearing conducted on November 11, 2013, the trial court found that Mother had failed to make the mortgage payments. The court therefore ordered that the home be sold. The court set a subsequent hearing for December 17, 2013, concerning the remaining issues of co-parenting and child support.

Due to the pressing demands of the trial court's docket on December 17, 2013, an evidentiary hearing would have required postponement. The parties desired to sell or refinance the marital residence, however, which necessitated immediate entry of a final decree. The parties therefore entered into a Marital Dissolution Agreement ("MDA") and agreed temporary parenting plan on that day, announcing both agreements before the court with no evidentiary hearing. The trial court entered a final decree of divorce, incorporating the MDA and the agreed temporary parenting plan with the stipulation that the parties would submit a permanent parenting plan no later than January 7, 2014.

According to the parenting plan entered in December 2013, Mother was designated as the primary residential parent for the Children. The plan provided 215 days of annual co-parenting time in favor of Mother, 150 days of annual co-parenting time for Father, and joint decision-making authority to the parents. Neither party thereafter filed a proposed permanent parenting plan by the January 7, 2014 deadline mandated in the trial court's December 2013 order. On February 14, 2014, Mother's counsel filed a motion to withdraw from representation, offering as a basis for withdrawal that counsel had been unable to communicate with Mother. The trial court granted counsel's motion to withdraw in an order entered March 3, 2014. Mother was allowed thirty days to retain substitute counsel or elect to proceed *pro se*.

The case again came on to be heard on April 15, 2014, for reasons that are not apparent from the record except that the parties had not yet filed a subsequent parenting plan pursuant to the court's December 17, 2013 order. As Mother appeared for the April 15, 2014 hearing self-represented, she requested a continuance to afford her additional time to obtain counsel. The trial court granted a continuance to August 15, 2014, for a hearing regarding entry of a permanent parenting plan. Meanwhile, the court also reviewed and adopted a proposed temporary parenting plan presented by Father. In an order entered April 25, 2014, the court adopted Father's proposed temporary parenting plan pending the final hearing, upon its finding that this plan was in the best interest of the Children. Under this plan, Father was designated as the primary residential parent, as opposed to Mother's such designation in the previous plan. The new parenting plan provided 132 days of annual co-parenting time in favor of Mother (as opposed to 215 days in the previous plan), 233 days of annual co-parenting time in favor of Father (as opposed to 150 days in the previous plan), and maintained the parties' joint decision-making authority.

By the time of the August 15, 2014 hearing, Mother had obtained counsel through Southeast Tennessee Legal Services. At the outset of the hearing, Father's counsel reminded the trial court of the case's procedural posture, explaining that the court had entered a final decree of divorce in December 2013 that reserved the issue of a permanent parenting plan. Father's counsel further explained that the parties were attempting to sell or refinance the marital residence, such that entry of a final decree was necessary at that time. During the hearing, the parties testified in open court, and the two oldest children testified in chambers. In significant part, the parties' testimony focused on the Children's performance in school. Upon the hearing's conclusion, the trial court took the matter under advisement. The court subsequently entered a Memorandum Opinion and Order on August 15, 2014, wherein the court, *inter alia*, determined that the parenting plan that had been entered in April 2014 was in the best interest of the Children and affirmed that it would constitute the parties' permanent parenting plan. The trial court altered the parents' decision-making authority, however, granting Father sole authority.

Thereafter, the trial court entered an order on August 29, 2014, confirming that a final divorce decree had been entered in December 2013 but stating that the parenting and child support issues had been reserved. The court incorporated into the order its Memorandum Opinion and Order, as well as the attached permanent parenting plan. On September 15, 2014, Mother filed a "Motion for New Trial or to Alter or Amend a Judgment." In this motion, Mother asserted that the trial court was required to enter a permanent parenting plan at the time the final decree of divorce was entered. Based upon the court's failure to do so, Mother argued, the divorce decree was either void or voidable. The court denied Mother's motion by order entered September 24, 2014. Mother timely appealed.

## II. Issues Presented

Mother presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by incorporating a temporary parenting plan rather than a permanent parenting plan into the final decree of divorce, thus rendering the divorce decree void.

2. Whether the trial court erred by failing to treat the agreed temporary parenting plan entered with the MDA and final decree of divorce as a permanent parenting plan.

3. Whether the parties could declare the MDA and temporary parenting plan voidable pursuant to the express terms of the MDA, based upon the trial court's entry of a subsequent and significantly different parenting plan.

4. Whether the trial court erred by entering a subsequent parenting plan unsupported by a preponderance of the evidence and failing to include findings of fact and conclusions of law in its final judgment.

## III. Standard of Review

With regard to a trial court's findings of fact following a bench trial, Tennessee Rule of Appellate Procedure 13(d) provides:

> Unless otherwise required by statute, review of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise.

We review conclusions of law, however, *de novo* and without any presumption of correctness. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996) (citing *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993)).

## IV. Finality of December 2013 Divorce Decree and Parenting Plan

Mother's initial two issues address the propriety of the trial court's action in entering a temporary parenting plan at the time the final decree of divorce was entered.

4

Mother alternatively argues (1) that the divorce decree should be declared void and the case remanded for a hearing regarding the permanent parenting plan or (2) that the temporary parenting plan should have been treated as a permanent parenting plan, with any subsequent changes thereto requiring a modification hearing. We will address each of these arguments in turn.

Mother first asserts that the trial court lacked authority to enter the final decree of divorce, which was based solely on the ground of irreconcilable differences without an accompanying permanent parenting plan. As this Court has previously explained, "the substantive law governing divorce is purely statutory." *See Trew v. Trew*, 1986 WL 1138 at *1 (Tenn. Ct. App. Jan. 28, 1986). The controlling statute with regard to divorce based upon irreconcilable differences states in pertinent part:

> No divorce shall be granted on the ground of irreconcilable differences unless the court affirmatively finds in its decree that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the equitable settlement of any property rights between the parties. If the court does not affirmatively find that the agreement is sufficient or equitable, the cause shall be continued by the court to allow further disposition by the petitioner. If both parties are present at the hearing, they may, at that time, ratify any amendments the court may have to the agreement. The amended agreement shall then become a part of the decree. The agreement shall be incorporated in the decree or incorporated by reference, and such decree may be modified as other decrees for divorce.

Tenn. Code Ann. § 36-4-103(b) (2014).[1] Mother insists that the trial court failed to comply with this statutory provision, thus rendering the divorce decree void.

In *Trew*, this Court was asked to adjudicate the validity of a divorce decree based on the ground of irreconcilable differences when the parties had no signed written agreement as required by the above statutory provision. *See* 1986 WL 1138 at *1. This Court vacated the divorce decree, explaining:

> The statute is unambiguous in mandating trial courts to affirmatively find the parties have provided for child support, child custody, and settlement of property rights in a written agreement. Absent compliance

---

[1] The enactment of this statutory provision predates the statutes regarding permanent parenting plans, Tennessee Code Annotated § 36-6-401 to -414, which were enacted in 1997.

with this statutory requirement, the court is without authority to grant a divorce on the grounds of irreconcilable differences.

*Id. See also Mackie v. Mackie*, No. 01-A-01-9810-CV-00536, 1999 WL 675134 at *1 (Tenn. Ct. App. Sept. 1, 1999) (modifying the parties' divorce decree to be based on stipulated grounds pursuant to Tennessee Code Annotated § 36-4-129 rather than irreconcilable differences because the parties had no marital dissolution agreement, as required by Tennessee Code Annotated § 36-4-103, and because they had alleged both "fault" and "no-fault" grounds in their pleadings).

In the case at bar, however, the parties had entered into signed, written agreements, which purported to provide for child support, a co-parenting schedule, and settlement of their property rights. The only issue regarding the parenting plan was that it was designated as "temporary," with the stipulation that a permanent plan would be forthcoming. Furthermore, in its final decree, the trial court affirmatively found in pertinent part:

> The parties have entered into a written, notarized Marital Dissolution Agreement and written Temporary Parenting Plan, which have been reviewed by the Court, and the Court affirmatively finds that the Marital Dissolution Agreement makes an equitable settlement of the parties' property rights and that the Temporary Parenting Plan makes adequate and sufficient provision for the temporary residential parenting and maintenance of the parties' minor children. The Court further finds that the parties agree to enter into and submit a Permanent Parenting Plan no later than January 7, 2014.

The court therefore granted the parties an absolute divorce on the basis of irreconcilable differences.

A review of the statutory requirements listed in Tennessee Code Annotated § 36-4-103(b) demonstrates that the trial court's final decree satisfies those requirements. The statute requires an affirmative finding by the trial court that "the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the equitable settlement of any property rights between the parties." Tenn. Code Ann. § 36-4-103(b). Such a finding was made in this case, based on the execution of a signed, notarized MDA and a signed, written agreed parenting plan, even though such parenting plan was designated as "temporary." The existence of these signed agreements distinguishes this case from *Trew* and, along with the proper affirmative findings of adequacy and sufficiency by the court contained in the final decree, satisfies the requirements of Tennessee Code Annotated § 36-4-103(b). *See also Vaccarella v. Vaccarella,* 49 S.W.3d 307, 314 (Tenn. Ct. App. 2001) (holding that

the trial court's finding that the parties' written marital dissolution agreement was "fair and just and equitable and [was] in the best interest of said parties involved" was sufficient to satisfy the statutory requirements of Tennessee Code Annotated § 36-4-103(b)); *Brown v. Brown*, 863 S.W.2d 432, 436 (Tenn. Ct. App. 1993) (holding that the trial court's finding that the parties' written marital dissolution agreement was "proper and equitable and the Court hereby approves, ratifies, and confirms said Agreement" was sufficient to satisfy the statutory requirements of Tennessee Code Annotated § 36-4-103(b)). For these reasons, we determine that the final decree based on the grounds of irreconcilable differences should not be declared void.

We now turn to Mother's second issue, which is whether the trial court erred by failing to treat the "temporary" parenting plan concomitantly entered with the final decree as a permanent parenting plan, such that any subsequent changes thereto would require a modification hearing. In support of her position, Mother relies upon this Court's opinions in *Davidson v. Davidson*, No. M2009-01990-COA-R3-CV, 2010 WL 4629470 at *2 (Tenn. Ct. App. Nov. 15, 2010), and *Gentry v. Gentry*, No. E2013-01038-COA-R9-CV, 2014 WL 2442937 at *1 (Tenn. Ct. App. Feb. 5, 2014). In *Davidson*, the trial court entered a final judgment of divorce and incorporated a parenting plan that the court designated as a "temporary order on custody," noting that the court wished to "monitor" the mother's behavior. *See* 2014 WL 2442937 at *1. The *Davidson* trial court subsequently reviewed the order twice and entered two successive permanent parenting plan orders in an effort to respond to changes in the mother's mental health progress in terms of her ability to parent the children. *See id.* at *4-6.

On appeal, this Court vacated the two later orders, which had purported to modify the parenting plan entered with the final judgment for divorce, and nullified the portion of the divorce judgment in which the trial court had deemed the parenting plan "temporary." *Id.* at *5. ("The trial court lacked authority to maintain indefinite control over the parenting plan, and the court's language in paragraph (2)(h), calling the plan temporary, does not undermine the finality of the Permanent Parenting Plan Order which was incorporated into the Final Decree of Divorce."). The *Davidson* court relied upon the provisions of Tennessee Code Annotated § 36-6-404(a) (2014), the statute governing parenting plans, which states in pertinent part:

> Any final decree or decree of modification in an action for absolute divorce, legal separation, annulment, or separate maintenance involving a minor child shall incorporate a permanent parenting plan; . . . .

Similarly, in *Gentry*, 2014 WL 2442937 at *1, the trial court incorporated a permanent parenting plan into the final judgment for divorce but stated in its judgment that the matter would be reviewed in twelve months to determine if it would be in the

children's best interest to grant additional co-parenting time to the father. In response to a subsequent petition to modify the parenting plan filed by the father, the *Gentry* trial court entered an order purporting to correct an error by converting the permanent parenting plan incorporated into the final decree to a temporary parenting plan. *Id.* at *1-2. The mother sought and was granted permission for an interlocutory appeal. *Id.* at *2. This Court reversed the trial court's order, which purported to modify the permanent parenting plan to a temporary one, and remanded for a hearing regarding the father's petition to modify the permanent parenting plan. *Id.* at *5. Citing *Davidson* with approval, this Court explained:

> *Davidson* is directly on point with respect to the case now before us. Similarly, in this case, the parenting plan order incorporated into the trial court's March 12, 2012, order is the statutorily required permanent parenting plan. The trial court was without authority to later modify it to make it "temporary," and its order to that effect is of no legal consequence.

*Id.* at *3 (citing *Davidson*, 2010 WL 4629470). The *Gentry* Court also cited the following explanation from *Davidson* with approval:

> The authority of a trial court to enter a temporary parenting plan is set forth in Tenn. Code Ann. § 36-6-403 which states, "[e]xcept as may be specifically provided otherwise herein, a temporary parenting plan shall be incorporated *in any temporary order* of the court in actions for absolute divorce, legal separation, annulment, or separate maintenance involving a minor child . . . ." Tenn. Code Ann. § 36-6-403 (2005) (emphasis added). A trial court is to make a final, "permanent" decision on parental responsibility when it enters the final order on divorce; temporary parenting plans are reserved for temporary orders pending the final hearing.

*Gentry*, 2014 WL 2442937 at *3 (quoting *Davidson*, 2010 WL 4629470 at *5) (emphasis originally in *Davidson*).

We agree with this analysis. As our Supreme Court has instructed regarding the proper construction of statutes:

> The primary objective of statutory construction is to determine the intent of the legislature and give effect to that intent. *Walker v. Sunrise Pontiac-GMC Truck, Inc.,* 249 S.W.3d 301, 309 (Tenn. 2008). To achieve this objective, we begin by examining the language of the statute in question. *Curtis v. G.E. Capital Modular Space,* 155 S.W.3d 877, 881 (Tenn. 2005). This Court presumes that the legislature intended every word be given full

8

effect. *Lanier v. Rains,* 229 S.W.3d 656, 661 (Tenn. 2007). Therefore, if the "language is not ambiguous . . . the plain and ordinary meaning of the statute must be given effect." *In re Adoption of A.M.H.,* 215 S.W.3d 793, 808 (Tenn. 2007). It is a further well-settled rule of construction that "statutes 'in pari materia'—those relating to the same subject or having a common purpose—are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Wilson v. Johnson Cnty.,* 879 S.W.2d 807, 809 (Tenn. 1994).

*Graham v. Caples*, 325 S.W.3d 578, 581-82 (Tenn. 2010). Therefore, construing Tennessee Code Annotated § 36-6-403 and -404(a) in tandem, it is clear that a trial court cannot enter a temporary parenting plan concomitant with a final decree of divorce.

Our Supreme Court has likewise made clear that "every final decree in a divorce action in Tennessee involving a minor child must incorporate a permanent parenting plan." *Armbrister v. Armbrister*, 414 S.W.3d 685, 696 (Tenn. 2013). Based upon the guidance of *Gentry* and *Davidson*, as well as the pertinent statutory provisions quoted above, we determine that the trial court herein similarly lacked authority to enter a "temporary" parenting plan concomitant with the parties' final decree of divorce. We therefore conclude that the provisions in the parties' final decree designating the parenting plan as "temporary" and contemplating the entry of a subsequent "permanent" parenting plan are of no consequence. We also conclude that the "temporary" parenting plan entered in December 2013 concomitant with the final decree must constitute the permanent parenting plan in this matter.

Father insists that *Gentry* and *Davidson* are factually distinguishable from the instant action because the parties in those cases did not agree to enter a temporary parenting plan with the final judgment for divorce. Although this factual distinction is accurate, it appears from a review of the applicable case law that this is a distinction without a legal difference. In *Gentry*, this Court cites extensively to our Supreme Court's "comprehensive guidance" provided in *Armbrister* "on how courts should balance the needs for finality and flexibility in parenting plans . . . ." *Gentry*, 2014 WL 2442937 at *4. *See Armbrister*, 414 S.W.3d at 696 ("[E]very final decree in a divorce action in Tennessee involving a minor child must incorporate a permanent parenting plan."). Furthermore, the controlling statutory provisions mandate the entry of a permanent parenting plan, rather than a temporary plan, with the entry of a final decree without regard to whether the divorce is agreed.

In the alternative, Father contends that if this Court determines that the parenting plan entered with the final decree of divorce be considered a permanent parenting plan, the case should be remanded for a hearing regarding modification of the plan. We agree

9

with Father's general contention.  As this Court elucidated in *Davidson*:

> Once the trial court enters a permanent parenting plan, the residential placement schedule is *res judicata* as to the facts in existence or reasonably foreseeable when the decision was made.  It cannot be modified unless there has been a material change in circumstances that makes a change in the child's best interest.

*Davidson*, 2010 WL 4629470 at *5 (internal citations omitted).  We note, however, that the record contains no modification petition filed by Father.  If such an action is instituted, a full evidentiary hearing regarding modification should then be conducted by the trial court.  *See Gentry*, 2014 WL 2442937 at *5 (remanding for a hearing on the father's petition to modify the parenting plan when the father had filed such a petition).  We conclude that the December 2013 parenting plan is currently the controlling permanent parenting plan at this time.  Any subsequent parenting plans entered by the trial court herein are vacated due to the lack of findings by the court regarding a material change of circumstances necessary for the grant of a modification.  *See Davidson*, 2010 WL 4629470 at *6.

## V.  Remaining Issues

Based on our ruling vacating the subsequent parenting plans entered by the trial court, we determine Mother's third and fourth issues to be pretermitted as moot.  In her appellate brief's conclusion section, Mother also requested an award of attorney's fees on appeal.  We note, however, that Mother did not raise this as an issue in her statement of the issues.  As our Supreme Court has explained:

> Appellate review is generally limited to the issues that have been presented for review.  Tenn. R. App. P. 13(b); *State v. Bledsoe,* 226 S.W.3d 349, 353 (Tenn. 2007).  Accordingly, the Advisory Commission on the Rules of Practice and Procedure has emphasized that briefs should "be oriented toward a statement of the issues presented in a case and the arguments in support thereof."  Tenn. R. App. P. 27, advisory comm'n cmt.

*Hodge v. Craig*, 382 S.W.3d 325, 334 (Tenn. 2012).  Because Mother did not raise the issue of attorney's fees on appeal in her statement of the issues, we determine this issue to be waived.  *See Champion v. CLC of Dyersburg, LLC*, 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011).

## VI. Conclusion

For the foregoing reasons, we vacate the trial court's permanent parenting plans entered in April and August 2014 and reinstate the parenting plan entered in December 2013, concomitant with the final decree, as the controlling permanent parenting plan in this case. Costs on appeal are assessed to the appellee, Christopher Michael Rigsby. This case is remanded to the trial court, pursuant to applicable law, for enforcement of this Court's judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE