IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 4, 2019 Session

## JEREMY ASH v. JACLYN ASH

**Appeal from the Circuit Court for Davidson County**
**No. 15D-206    Phillip R. Robinson, Judge**

_____

### No. M2018-00901-COA-R3-CV

_____

This appeal arises from a post-divorce dispute over child custody wherein the father filed a petition to modify the permanent parenting plan. Following a hearing in October 2017, the Trial Court found that a material change in circumstance existed and implemented a temporary parenting plan, determining that plan to be in the child's best interest. Thereafter in April 2018, the Trial Court converted that temporary parenting plan into a permanent parenting plan upon its determination that the temporary plan appeared to be working satisfactorily. Mother appeals to this Court. Because the Trial Court did not conduct a best interest analysis or make the required statutory finding of best interest, we vacate the April 2018 judgment of the Trial Court and remand for further proceedings as necessary. We affirm the Trial Court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed in Part, Vacated in Part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Nathan C. Sanders, Nashville, Tennessee, for the appellant, Jaclyn Ash.

Connie Allison, Nashville, Tennessee, for the appellee, Jeremy Ash.

# OPINION

## Background

Jaclyn Ash ("Mother") and Jeremy Ash ("Father") were divorced in May of 2015, and a permanent parenting plan was entered with regard to their minor child ("the Child"). The permanent parenting plan designated Mother the primary residential parent and called for Mother and Father each to have 182.5 days of parenting time, for joint decision making with regard to all major decisions, and for Father to pay child support to Mother.

In August of 2015, Father filed a petition seeking to modify parenting time alleging, in part, that the Child had spent more time with Father due to Mother's stress levels and emotional fragility and that Mother had a history of suicidal threats and hospital visits for breakdowns. Father alleged that Mother had been taken to a mental health facility by the police due to suicidal threats. Father also filed a motion for sole custody of the Child and a motion for a psychiatric evaluation of Mother. The Davidson County Circuit Court ("Trial Court") entered a temporary restraining order on August 7, 2015, prohibiting Mother from having "possession and unsupervised visitation" with the Child, who would be in the sole custody of Father at that time. In response, Mother filed a motion seeking to dissolve the restraining order.

Upon consideration of Father's and Mother's filings, the Trial Court entered an order on August 31, 2015, stating that it had reviewed Mother's medical report, which stated that Mother had a history of anxiety and depression, had complained of a panic attack, and had mentioned wanting to die but not really meaning it. According to the Trial Court, these issues were troubling and required the Trial Court "to delve into them a little further." The August 31, 2015 order modified the temporary restraining order and stated, as pertinent, that Mother's visits would continue to be supervised and that the matter would be reset for further hearing to assess Mother's circumstances. In its September 2, 2015 order, the Trial Court denied both Father's motion for sole custody of the Child as being moot having already been addressed by the Trial Court and his motion requesting a psychiatric evaluation for Mother because Mother already was seeing a psychiatrist. The Trial Court, however, granted Father's motion to allow him to obtain Mother's medical and psychiatric records.

Mother, thereafter, filed an answer to Father's petition and a countercomplaint requesting that the Trial Court dissolve the temporary restraining order, award Mother primary custody of the Child, and enter a restraining order prohibiting Father from commuting with the Child to and from Illinois and restricting Father from communicating with Mother for any reason other than parenting reasons. On September 16, 2015, the Trial Court entered an order finding that Mother appeared to be "doing well" and again modifying the temporary restraining order to allow Mother unsupervised overnight

parenting time. The Trial Court also directed Mother that if she suffered any panic attacks or suicidal ideations or needed to be institutionalized, she needed to contact Father to take possession of the Child and was not allowed to leave the Child with her family or friends.

In November 2015, Mother filed a petition for criminal contempt against Father, alleging that Father had violated the temporary restraining order by sending Mother annoying, spiteful, and condescending emails and that Father had violated the final divorce decree by continuing to charge items on the parties' joint credit account at Rooms to Go. Father subsequently filed a motion to set child support and to modify visitation, to which Mother filed a response. In December 2015, the Trial Court entered an order dissolving the temporary restraining order after determining that no emergency currently existed to justify a restraining order. The Trial Court reinstated the parties original permanent parenting plan. In January 2016, the Trial Court entered an agreed order dismissing all pending matters before the court.

As relevant to the current action on appeal, Mother filed a petition for civil contempt in May 2016, alleging that the Child needed speech therapy and that Father refused to pay his portion of this expense. Father subsequently filed a petition in November 2016, seeking to modify Mother's parenting time "due to egregious parental alienation" and to restrain Mother from contacting Father's family. Father argued that Mother had been responsible for multiple meritless complaints to the Department of Children's Services and that she subsequently had filed a petition for an ex parte order of protection alleging sexual abuse allegations against the Child's seven-year-old stepbrother who lived with Father and his current wife. According to Father, Mother's action of requesting the ex parte order of protection had prevented Father from having the Child in his home unless he first removed his wife and stepchildren from their home. According to Father's petition, Mother had coached the Child regarding the sexual abuse allegations. Father also alleged that Mother had "a violent tantrum" at the Child's daycare causing the Child to be dismissed from daycare. In his petition, Father sought to obtain sole custody of the Child and to restrict Mother's visitation to only supervised visitation.

Father subsequently filed an amended petition in December 2016, adding the additional allegations that Mother had voluntarily dismissed her petition seeking an order of protection on the day before the hearing, that his parenting time had been significantly reduced due to the ex parte order of protection, and that Mother was continuing to interfere with Father's parenting time. In response to Father's amended petition, the Trial Court entered a temporary restraining order on December 15, 2016, restraining Mother from possession of and unsupervised visitation with the Child, who again was placed in the sole custody of Father.

- 3 -

Mother then filed a motion to set parenting time, an ex parte motion to set aside the ex parte temporary restraining order, an answer in response to Father's petition, and a motion requesting an order requiring Father to continue the Child's therapy. Father filed a response to Mother's motion to set parenting time. In February 2017, Father filed a motion seeking to terminate Mother's supervised visitation or to have the person supervising the visitation replaced. The Trial Court then entered an order restraining both Mother and Father from talking to the Child about the litigation, from making disparaging remarks about the other to the Child, and from having discussions with the Child about the sexual abuse allegations or "'good touch/bad touch,'" and giving specific direction to the person supervising Mother's visitations.[1]

In March 2017, the Trial Court entered an order finding, in part, that Mother had voluntarily dismissed her petition seeking an order of protection against the Child's stepbrother. The Trial Court further expressed concerns Mother was abusing the process because Mother did not rely upon the findings made by the Department of Children's Services and had unnecessarily filed a petition seeking an order of protection. In this order, the Trial Court kept in place the temporary restraining order, but expanded Mother's supervised visitation time. The Trial Court also found that it was in the Child's best interest to remain with Father pending the outcome of the case. In April 2017, the Trial Court entered an order stating that it was concerned that despite the supervisor's best efforts, Mother's visits still were causing problems for the Child. The Trial Court, therefore, required both parents to attend a parenting seminar.

The Trial Court conducted an evidentiary hearing over the course of seven non-consecutive days from June 2017 through October 2017.[2] On October 24, 2017, the Trial Court entered its "Final Order" finding that the Child had been coached prior to or during the forensic interview process. The Trial Court recognized that evidence had been presented of coaching by both parents but made no specific finding regarding which parent had coached the Child. The Trial Court further found that Mother had been "primarily responsible for creating a contentious and hostile relationship between the parties which [made] co-parenting and a shared parenting arrangement impossible," that Mother's behavior had been detrimental to the Child, and that Mother was not a "credible reporter" regarding allegations made to the Department of Children's Services. The Trial Court further found that a material change in circumstance had occurred and that it was in the best interest of the Child for Father to be designated as the primary residential parent, for Father to make all major decisions involving the Child, and for the Child to reside the majority of the time with Father. The Trial Court ordered that Mother's visitation remain supervised until Mother had completed five counseling sessions and requested that the

---

[1] The Trial Court joined the court-designated supervisor into the case for the sole purpose of supervising Mother's visitation.

[2] At the beginning of trial, Mother voluntarily dismissed her civil contempt petition against Father. The Trial Court taxed the costs associated with the petition to Mother.

Trial Court implement the approved parenting plan. The Trial Court also stated that the plan would remain temporary pending a scheduled review.

Additionally, the Trial Court awarded to Father a portion of the attorney's fees he had incurred during this action, which totaled $19,000. The Trial Court taxed all court costs to Mother. The Trial Court also ordered Mother to pay Father $128 per month in child support and that Father was entitled to retroactive child support in the amount of $1,280 to be paid at $50 per month.

In November 2017, Mother filed a motion stating that she had completed her five therapy sessions and that the therapist had recommended that Mother begin her parenting time pursuant to the October 2017 temporary parenting plan. Father responded alleging that the recommendation from the therapist was mixed and that there still were problems with Mother's behavior around the Child. In December 2017, the Trial Court entered an order lifting the requirement that Mother's visitation be supervised and implementing the temporary parenting plan. In April 2018, the Trial Court reviewed the situation, hearing statements by counsel regarding how the parenting plan was working. The Trial Court entered an order on April 20, 2018, finding that the parenting arrangement in the October 2017 temporary parenting plan was working satisfactorily and would remain in full force and effect and that any future modifications would need to be addressed by a new petition and a showing of a material change in circumstance. The Trial Court further ordered that each party should pay their own attorney's fees and that all remaining court costs be divided equally between the parties. Mother timely appealed.

## Discussion

Although not stated exactly as such, Mother raises three issues for our review on appeal: (1) whether the Trial Court erred by converting a temporary parenting plan into a permanent parenting plan without determining such action was in the Child's best interest, (2) whether the Trial Court erred by making legal errors and incorrect factual finding in the best interest analysis contained in its October 2017 order such to require reversal of the Trial Court's adoption of the modified parenting plan, and (3) whether the Trial Court's alleged errors require reversal of the Trial Court's awards of court costs, attorney's fees, and child support to Father.

Our review is de novo upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). A trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Kelly*, 445 S.W.3d at 692. Regarding permanent parenting plans, our Supreme Court has stated: "In assessing a petition to modify a permanent parenting plan, the court must first determine if a material change in circumstances has

occurred and then apply the 'best interest' factors of section 36-6-106(a)." *Armbrister v. Armbrister,* 414 S.W.3d 685, 697-98 (Tenn. 2013).

We first address Mother's issue regarding whether the Trial Court erred by adopting the October 2017 temporary parenting plan as the permanent parenting plan in its April 2018 order. According to Mother, the Trial Court incorrectly applied a presumption in favor of the temporary parenting plan and adopted the plan as permanent without finding the plan to be in the Child's best interest at that time. Alternatively, Mother argues that "[e]ven if the findings set forth in the 2017 Order could be used to justify the Trial Court's April 2018 decision to adopt a new permanent parenting plan, the Trial Court still must be reversed" due to errors in the October 2017 order.

Tennessee Code Annotated § 36-6-406(e) provides that "[i]n entering a permanent parenting plan, the court shall not draw any presumptions from the temporary parenting plan." As such, a trial court cannot simply maintain the current provisions of a temporary parenting plan, in an effort to "leave the parties' situation 'as is' in order to maintain the 'status quo.'" *Smith v. Smith*, No. W2013-02095-COA-R3-CV, 2015 WL 3971836, at *5 (Tenn. Ct. App. June 30, 2015) (quoting *Burden v. Burden*, 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007)). In actions to modify permanent parenting plans where a material change of circumstances is found, a trial court is required to conduct a best interest analysis by examining the enumerated factors in Tennessee Code Annotated § 36-6-106(a) and make a finding whether the modified permanent parenting plan is in the child's best interest. *See* Tenn. Code Ann. § 36-6-405(a) (2017) (instructing that in actions to modify a permanent parenting plan, "[t]he process established by § 36-6-404(b) shall be used to establish an amended permanent parenting plan or final decree or judgment."); Tenn. Code Ann. § 36-6-404(b) (2017) (directing the trial court to consider the best interest factors found in section 36-6-106(a)(1)-(15)); Tennessee Code Annotated § 36-6-106(a) (2017) (requiring that in all child custody actions, the trial court shall make its determination "on the basis of the best interest of the child" and instructing the court to consider the specific factors provided in the statute).

We note that the Trial Court had determined in its October 2017 order that a material change in circumstance had occurred since the parties' divorce and had approved a temporary parenting plan, which the Trial Court found was in the Child's best interest at that time. The Trial Court also stated that this temporary parenting plan would be just that, temporary, pending a later review. The Trial Court in this case ruled in its April 2018 order adopting the permanent parenting plan, in pertinent part: "At this time, the parties' Court ordered Parenting Plan of October 24, 2017 appears to be working satisfactorily with a minimum of strife between the parties. Therefore, the parenting arrangement set forth in the Parenting Plan of October 24, 2017 shall remain in full force and effect." The Trial Court further ordered that any subsequent modifications to the plan would be addressed by a petition and a showing of a material change in

- 6 -

circumstance. As such, the Trial Court essentially converted the provisions of the temporary parenting plan into a permanent parenting plan.

The Trial Court's April 2018 order did not adopt the findings of fact from the October 2017 order and the only additional finding of fact as to the parties' or the Child's circumstances was its finding that the temporary plan was "working satisfactorily with a minimum of strife between the parties." The Trial Court made no reference to the factors in Tennessee Code Annotated § 36-6-106(a) and did not find that the April 2018 permanent parenting plan was in the Child's best interest at that time. Upon a review of the record, Mother is correct that the Trial Court did not conduct a best interest analysis or make a finding that the April 2018 permanent parenting plan was in the Child's best interest at that time. The Trial Court's earlier best interest analysis was associated with the October 2017 parenting plan, which the Trial Court deemed as temporary. This earlier finding was not sufficient to support adoption of the permanent parenting plan in April 2018, although the provisions were identical. We cannot assume that what was in the Child's best interest in October 2017 was still so in April 2018. The Trial Court should have determined whether the temporary parenting plan remained in the best interest of the Child at the time it was adopted as permanent. The Trial Court's sole finding that the temporary plan was "working satisfactory with a minimum of strife between the parties," by itself, was not sufficient to satisfy the Trial Court's obligation to make a best interest determination as of April 2018. The fact that a temporary plan is "working satisfactory with a minimum of strife between the parties" does not end the court's inquiry as to best interest at that time. Such a finding by the Trial Court, while certainly relevant to the Child's best interest, does not mean that the plan is automatically in the Child's best interest. The Trial Court must consider all the relevant factors in making its best interest determination.

Regarding the impact on appellate review of a lack of best interest analysis from a trial court in custody determination cases, this Court has stated:

> This Court has previously held that a custody determination on behalf of a child is a "fact-intensive issue" that requires detailed findings of fact and conclusions of law by the trial court. *See Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Feb. 22, 2013) (concerning parental relocation) (citing Tenn. R. Civ. P. 52.01 (requiring findings of fact and conclusions of law in bench trials)). In similar cases, this Court has vacated the judgment of the trial court where the court failed to make findings to support its rulings or where it failed to engage in a best interest analysis. *See, e.g., Iman v. Iman*, No. M2012-02388-COA-R3-CV, 2013 WL 7343928, at *13 (Tenn. Ct. App. Nov. 19, 2013) (vacating the judgment of the trial court when it failed to make appropriate findings of fact and failed to "make an explicit finding that modification was in the child's best interest"); *Pandey*, 2013 WL 657799,

at *5-*6 (vacating based on the lack of findings); *Hardin v. Hardin*, No. W2012-00273-COA-R3-CV, 2012 WL 6727533, at *5 (Tenn. Ct. App. Dec. 27, 2012) (vacating based on the trial court's failure to make a finding that modification of the parenting plan was in the child's best interest).

This Court has previously held that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality." *In re K.H.*, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." *Id.*; *White v. Moody*, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); *Bruce v. Bruce*, 801 S.W.2d 102, 104 (Tenn. Ct. App. 1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." *In re K.H.*, 2009 WL 1362314, at *8 (quoting *In re M.E. W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. April 21, 2004)). In this case, the trial court failed to make any findings regarding the best interest of the child. Best interests, however, is the "paramount consideration," the "pole star, the alpha and omega," of any child custody determination. *Bah v. Bah*, 668 S.W.2d 663, 665 (Tenn. Ct. App. 1983).

*Aragon v. Aragon*, No. M2013-01962-COA-R3-CV, 2014 WL 1607350, at *9 (Tenn. Ct. App. Apr. 21, 2014), *no appl. perm. appeal filed*.

In this action, we determine that the Trial Court erred by failing to conduct a best interest analysis to determine whether the permanent parenting plan was in the Child's best interest in April 2018. We decline to overlook the absence of a best interest analysis or the statutorily required findings. As such, we vacate the Trial Court's April 2018 judgment and remand this case to the Trial Court for a new hearing in order for the Trial Court to enter a permanent parenting plan after considering all relevant factors in Tennessee Code Annotated § 36-6-106(a) to reach its determination as to the Child's best interest. Due to the passage of time, this best interest determination is to be made as of the date of the remand hearing. The October 2017 temporary parenting plan will remain in effect pending the Trial Court's adoption of a permanent parenting plan on remand.

Additionally, Mother contends that this Court should vacate the Trial Court's orders concerning attorney's fees, court costs, and child support. Considering Mother's issues on appeal, the only error that we find by the Trial Court was its failure to conduct a full best interest analysis in April 2018 prior to implementing the permanent parenting plan. As such, we vacate the Trial Court's orders as to attorney's fees and court costs related to the April 2018 order. However, we affirm the Trial Court's awards of attorney's fees, court costs, and child support in the October 2017 order.

To the extent that Mother is requesting an award to her for her attorney's fees incurred during the appeal in the argument section of her appellate brief, we deny such request. Mother failed to raise as an issue on appeal in her statement of the issues that she was requesting an award for attorney's fees on appeal. Therefore, we determine that Mother has waived this issue. *See Rigsby v. Rigsby*, No. E2014-02095-COA-R3-CV, 2015 WL 7575075, at *7 (Tenn. Ct. App. Nov. 25, 2015) ("Because Mother did not raise the issue of attorney's fees on appeal in her statement of the issues, we determine this issue to be waived." (citing *Champion v. CLC of Dyersburg, LLC,* 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011))).

## Conclusion

The April 2018 judgment of the Trial Court is hereby vacated. The Trial Court is affirmed in all other respects. This cause is remanded to the Trial Court for adoption of a permanent parenting plan upon the Trial Court's determination that such plan is in the Child's best interest at the date of the remand hearing and for collection of the costs assessed below. The costs on appeal are assessed one-half against the appellant, Jaclyn Ash, and her surety, if any, and one-half against the appellee, Jeremy Ash.

_____
D. MICHAEL SWINEY, CHIEF JUDGE