IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 2, 2016

**JASON LAMAR HOWARD v. CYNTHIA TERESA WALLIN HOWARD**

**Appeal from the Circuit Court for Hamilton County**
**No. 10D2122 Ward Jeffrey Hollingsworth, Judge**
———————————————————

**No. E2015-00908-COA-R3-CV-FILED-JULY 13, 2016**
———————————————————

In this post-divorce proceeding, Father appeals the trial court's modification of a permanent parenting plan and child support. Father also appeals the trial court's refusal to hold Mother in contempt. We affirm the trial court's decision declining to hold Mother in criminal contempt. However, because the order in the record with regard to both the parenting plan and the civil contempt charge contain insufficient findings of fact or conclusions of law, we vacate and remand those issues to the trial court for reconsideration.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part, and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which CHARLES D. SUSANO, And RICHARD H. DINKINS, JJ., joined.

Harold L. North, Jr., Chattanooga, Tennessee, for the appellant, Jason Lamar Howard.

Lisa Z. Bowman, Chattanooga, Tennessee, for the appellee, Cynthia Teresa Wallin Howard.

**OPINION**

**BACKGROUND**

This appeal involves a post-divorce modification of a permanent parenting plan and child support. Jason Lamar Howard ("Father") and Cynthia Teresa Wallin Howard ("Mother") were divorced by final decree of divorce entered on October 25, 2011. The

parties have one minor child ("the child") from the marriage.[1] At the time of the divorce, a permanent parenting plan was entered by the trial court, purporting to give each parent equal parenting time, or 182.5 days per year of parenting time. On July 9, 2013, Father filed a Petition to Modify the Divorce Decree and requested a modification of the parenting schedule and his child support obligation. Father alleged that, although the permanent parenting plan entered at the time of divorce provided he would have equal parenting time with Mother, the schedule did not amount to 182.5 days. Father submitted a proposed parenting plan with his petition, in which he designated himself as the primary residential parent, and allotted himself 181 days per year and allotted Mother 184 days per year.

On October 31, 2013, the parties attempted mediation, but were unsuccessful. On November 15, 2013, Mother filed a motion for additional time to respond to Father's petition. Mother did not file an answer within the next several months, and Father filed a motion for default judgment on January 23, 2014. On February 3, 2014, Mother filed an answer to the petition, asserting that Father failed to allege that a material change in circumstance existed and denying that a modification of the plan was warranted.

Father filed a motion to amend his petition on February 20, 2014. Father's amended petition included significantly more detailed allegations. Additionally, he attached another proposed parenting plan, again designating himself as primary residential parent. He proposed that Mother's parenting time be reduced to 104 days per year, and Father be awarded 261 days per year. By order entered March 5, 2014, the trial court granted Father's request to amend his petition. Father filed the amended petition on March 10, 2014.

On August 18, 2014, Father filed a "Petition for Civil and/or Criminal Contempt" against Mother. Among other things, he averred that Mother refused to permit him to pick up the child for his scheduled parenting time after some confusion over the timing of a summer vacation. As relief, Father requested that he be granted additional parenting time with the child to compensate for the time lost by Mother's allegedly wrongful conduct.[2]

The trial court conducted a trial on March 20, 27, and April 8, 2015. Mother answered Father's amended petition to modify on March 20, 2015, the first day of trial, and attached another proposed permanent parenting plan. In her answer, she admitted that a material

---

[1] In an attempt to protect the minor child's privacy in this case, we have chosen to omit the child's name from this Opinion and refer to "the child." Additionally, we have tried to omit any other information that could be used to identify the child.

[2] On March 20, 2015, the record indicates that Father filed yet another proposed permanent parenting plan. This plan proposes again that Father be named primary residential parent, but that the number of parenting days awarded to Mother are 160 days per year, while Father is awarded 205 days per year. However, the plan appears to be filed with no other documentation indicating the purpose for filing, nor is there any indication that Father had leave of court to file it.

change in circumstance existed. Her proposed plan named her as primary residential parent and allotted her 261 days of parenting time per year, while Father received 104 days of parenting time per year.

The trial court heard testimony from several witnesses including: Father, Mother, members of both Mother's and Father's extended family, the child's schoolteacher, other workers at the child's school, and family friends of both Mother and Father. The testimony at trial generally involved the health of the child, both parents' ability to care for the child, the parenting styles of both parents, and the relationship between the child and both parents.

On April 22, 2015, the trial court entered an order that modified the parties' original permanent parenting plan. The trial court found a material change in circumstances supporting such a modification in that the current schedule is disruptive of the child's school week. The trial court noted that the parties were unable to cooperate and attached a new permanent parenting plan. The April 22, 2015 plan named Mother as primary residential parent, awarding her 197 days per year. Father was awarded 168 days per year. Father's child support obligation was changed accordingly. Additionally, the trial court declined to hold either party in contempt. Father appealed to this Court.

On July 15, 2015, the parties filed a joint motion for limited remand of this proceeding "solely with regard to the determination of certain provisions of the Permanent Parenting Plan Order . . . ." This Court granted the parties' motion by way of written order entered September 14, 2015, directing the trial court to "address [] the unresolved issues identified by the parties in their motion . . . ." The trial court purportedly remedied the parties' concerns in a new parenting plan entered October 2, 2015. The trial court's October 2, 2015 parenting plan is therefore the operative order for purposes of this appeal.

**ISSUES**

Father raises five issues on appeal, which we have reworded:

> 1. Whether the trial court made sufficient findings pursuant to Tennessee Rule of Civil Procedure 52.01 and Tennessee Code Annotated Section 36-6-101(a)(2)(B)(i).
> 2. Whether the trial court erred by not designating Father as Primary Residential Parent and in reducing Father's parenting time?
> 3. Whether the trial court erred in calculating Father's child support obligation?
> 4. Whether the trial court erred in modifying certain aspects of the permanent parenting plan, specifically with regard to fall/spring vacations, place of exchange of the child, designation

- 3 -

of parent responsible for child care, right of non-custodial parent to contact the child, issues surrounding the child's education, and failure to designate a primary residential parent.

5. Whether the trial court erred in not finding Mother in contempt.[3]

## ANALYSIS

The threshold issue in proceedings to modify a parenting plan is whether a material change in circumstances affecting the child's best interest has occurred since the adoption of the existing parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(C); *see **Kendrick v. Shoemake***, 90 S.W.3d 566, 570 (Tenn. 2002). At the outset, however, Father challenges the trial court's decision on two procedural grounds. First, Father contends that the trial court erred when it reduced his parenting time without Mother filing a pleading requesting such relief, and thus, he was not put on notice that his current parenting time was in jeopardy. Next, Father claims that the trial court also erred when it did not enter findings of fact and conclusions of law accompanying its October 2, 2015 permanent parenting plan. We address each concern in turn.

## Notice

Father first argues that the trial court erred when it reduced his parenting time because Mother failed to file a pleading requesting such relief. He claims that he had no notice of the potential for any reduction of his current parenting time. Tennessee law is clear that due process requires, at a minimum, "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." ***Keisling v. Keisling***, 92 S.W.3d 374, 377 (Tenn. 2002) (quoting ***State v. Pearson***, 858 S.W.2d 879, 884 (Tenn. 1993)). In ***Keisling***, the Tennessee Supreme Court held that due process required, at a minimum, a pleading filed by a party in order for custody of a child to be changed. In that case, mother filed a petition to modify father's

---

[3] Mother has requested her attorney's fees associated with defending this appeal. However, she did not designate this as an issue on appeal in her statement of the issues, nor does she provide any legal basis for such an award. We therefore deem the issue waived. ***Forbess v. Forbess***, 370 S.W.3d 347, 356 (Tenn. Ct. App. 2011) (holding that husband waived an issue by his failure to designate it as an issue in his statement of the issues); ***Newcomb v. Kohler Co.***, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006) (holding that the "failure of a party to cite any authority or to construct an argument regarding his position on appeal constitutes waiver of that issue"); *see also See, e.g.,* ***Rigsby v. Rigsby***, No. E2014-02095-COA-R3-CV, 2015 WL 7575075, at *7 (Tenn. Ct. App. Nov. 25, 2015) ("Because Mother did not raise the issue of attorney's fees on appeal in her statement of the issues, we determine this issue to be waived.") (citing ***Champion v. CLC of Dyersburg, LLC***, 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011)); ***Culpepper v. Culpepper***, No. E2014-00815-COA-R3-CV, 2015 WL 6735909, at *6 (Tenn. Ct. App. Nov. 4, 2015) (same).

visitation due to allegations of sexual abuse. Two weeks after the filing of the petition, before father had filed any response to mother's petition, the trial court had what it characterized as an "emergency hearing," which lasted three days. At the hearing, father's counsel orally indicated that he intended to renew a prior petition to change custody to father based on mother's meritless accusations. *Id.* at 376. At the conclusion of mother's proof, the trial court denied mother's request for relief, finding that father had not sexually abused the children. The trial court then orally directed that custody of the children would temporarily be changed to father, despite the fact that no pleading had been filed seeking such relief. The trial court stated that its decision to change custody was based upon father's oral petition and directed father to promptly file a written petition to "get our record clear." Mother sought an extraordinary appeal of the trial court's ruling. *Id.* at 377. On appeal, the Tennessee Supreme Court held that because of the substantial risk that a parents' child will be removed from his or her care erroneously, due process required, at a minimum, a pleading be "filed informing the parent that a change in custody is being contemplated by the court." *Id.* at 378. Accordingly, in the absence of a pleading indicating that a change of custody is at issue, due process prevents the court from considering that issue. The question in this case, like in *Keisling*, is whether Father received these minimum due process guarantees.

In the instant case, we conclude that Father had sufficient notice that Mother sought to increase her parenting time and decrease Father's parenting time. Despite Father's assertion that Mother did not request an increase in parenting time before trial, the record indicates that Mother attached a proposed parenting plan to her answer to Father's petition. In her proposed plan, she requested a decrease in Father's parenting time, and necessarily, an increase in hers. Although the better practice would have been to specifically assert a claim in the body of her answer or in a counterclaim, Father was certainly aware of Mother's intent to seek additional parenting time at trial, and he never objected to the filing of Mother's answer, to which she attached her proposed permanent parenting plan that proffered a reduction in Father's parenting time. Additionally, Father also did not object at trial when Mother's proposed plan was entered as an exhibit. Indeed, at trial, counsel for Mother and Mother had the following exchange:

> Q. Can you tell the Court why it is you think that [Father's] parenting time during the week needs to be stopped or somewhat modified?
> A. [The child] is constantly in transition. She is facing two different households with extremely different sets of rules and parenting styles; it is very confusing for her. She doesn't always learn her spelling words at her father's house. . . .

At this point during trial, counsel for Father objected based on hearsay to Mother's attempt to recite what the child had stated regarding the parties' current arrangement, (which is omitted from the foregoing excerpt). However, counsel for Father did not object to Mother's

testimony regarding her request for a reduction in Father's parenting time. Even assuming *arguendo* that Mother had not made a written request to reduce Father's parenting time, counsel for Father requested for the pleadings to conform to the proof presented at trial, which certainly includes Mother's requests made during trial. *See* Tenn. R. Civ. P. 15.02 (providing that issues not raised by the pleadings but raised at trial may be treated in all respects as if they had been raised in the pleadings). Counsel's request was immediately granted. Accordingly, based on the foregoing, we conclude that Father was adequately apprised of Mother's intent to seek additional parenting time while reducing Father's.

### Requisite Findings of Fact Pursuant to Tennessee Rule of Civil Procedure 52.01 and Tennessee Code Annotated Section 36-6-101(a)(2)(B)(i)

Father's next assignment of error involves the trial court's duty to make specific findings of fact and conclusions of law. Father argues that the trial court's October 2, 2015 order violates both Rule 52.01 of the Tennessee Rules of Civil Procedure and Tennessee Code Annotated Section 36-6-101(a)(2)(B)(i). Rule 52.01 provides, in relevant part: "In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Similarly, Section 36-6-101(a)(2)(B)(i) provides that, when modifying a court's prior decree pertaining to the custody of a child, the court "shall make such a finding as to the reason and the facts that constitute the basis for the custody determination." In the instant case, although the trial court entered findings of fact and conclusions of law with its April 22, 2015 order, it did not enter any additional findings or conclusions with its October 2, 2015 order, despite the fact that the plans contain strikingly different provisions.

Most glaringly, in the October 2, 2015 order, Father's parenting time is reduced to 104 days per year, which is drastically lower than both the 168 days per year awarded in the April 22, 2015 order, and 182.5 days per year awarded in the original parenting plan. Upon review of the record, this Court is unable to ascertain whether the reduction in Father's time as shown in the October 2, 2015 order stems from an attempt to correct the miscalculation of Father's parenting days or by a factual determination by the trial court stemming from the evidence at trial.

The trial court did not enter any additional findings with its October 2, 2015 order, and other provisions in the plan add to this Court's confusion. For example, the plan attached to the October 2, 2015 order includes one provision under "Day-to-Day Schedule" that provides that "[w]hen the child is out of school for Summer Vacation, the schedule will alternate between the parents from Sunday at 6:00 P.M. to Sunday at 6:00 P.M. . . . ." The provision under "Summer Vacation," however, provides that the normal day-to-day schedule applies, which provides that Father's parenting time begins Thursdays after school until Sundays at 6:00 P.M. every other week. These two provisions regarding summer vacation are irreconcilable.

The trial court's October 2, 2015 order includes several other deficiencies that preclude this Court from reaching the merits of this appeal. The parties requested the trial court to remedy many of the following items in the new plan, and this Court filed an Order directing the trial court to do so. Despite this fact, the new plan contains sections that were not addressed by the trial court. Although requested by the parties and ordered by this Court, the trial court did not designate a primary residential parent pursuant to Section IV of the new plan. The trial court also failed to denote which parent maintained the responsibility for obtaining dental, orthodontic, and optical insurance for the minor child, if such insurance was available through that parent's employment. These omissions from the trial court's October 2, 2015 order stand in derogation of this Court's specific instruction to "address [] the unresolved issues identified by the parties in their motion . . . ."

Before entering its order, the record demonstrates that the trial court sent the order via e-mail to the parties. At this point, the record indicates that the parties again subsequently attempted to address some of these concerns before the trial court actually entered its October 2, 2015 order.[4] The parties' concerns with the new plan included a misspelling of Mother's full name; an incorrect recitation of the date of the permanent parenting plan being modified;[5] an omission of the guidelines surrounding the child's education; an erroneous calculation of Father's income; certain guidelines regarding when Father may contact the child when the child is in Mother's care; tax consequences of the ordered child support; and issues surrounding summer vacation. Without addressing the foregoing concerns, the trial court filed the October 2, 2015 order. To date, these concerns have not been addressed. However, equally important, the record does not include any explanation by the trial court justifying the significant variances between the parenting plan entered after trial on April 22, 2015 and the plan attached to the trial court's October 2, 2015 order.

Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." **Lake v. Haynes**, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). However, this Court has indicated that we may "soldier on" with our review despite the trial court's failure to make sufficient findings of fact and conclusions of law, in certain limited circumstances:

---

[4] The parties filed a motion in this Court requesting that certain exhibits demonstrating their communication of their concerns to the trial court be made part of the record on appeal. This Court granted the parties' motion.

[5] To begin, the trial court's new plan states that it "modifies an existing Order dated April 22, 2007" despite the fact that the parties' original plan was entered the year of their divorce in 2011.

> On occasion, when a trial judge fails to make findings of fact and conclusions of law, the appellate court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.'" ***Hanson v. J.C. Hobbs Co., Inc.***, No. W2011–02523–COA–R3–CV, 2012 WL 5873582, at * 10 (Tenn. Ct. App. Nov. 21, 2012) (quoting ***Simpson v. Fowler***, No. W2011–02112–COA–R3–CV, 2012 WL 3675321, at *4 (Tenn. Ct. App. Aug. 28, 2012)).

***Pandey v. Shrivastava***, No. W2012–00059–COA–R3–CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Feb. 22, 2013).

In light of the foregoing deficiencies, this Court is unable to conduct an adequate review and must remand this case to the trial court for entry of a complete parenting plan accompanied by sufficient findings of fact and conclusions of law. The findings of fact and conclusions and law should be specific and should explain the trial court's rationale for any modification surrounding the parenting plan. While this Court recognizes that the instant case involves a contentious and acrimonious dispute between divorced parents, it would be inappropriate for us to speculate as to the trial court's reasoning for the foregoing omissions and variations between the numerous parenting plans entered in this case. Accordingly, this issue is remanded to the trial court with instructions to enter a complete parenting plan and render sufficient findings of fact and conclusions of law regarding the implementation of the entered plan.

In addition, because the award of child support depends on the number of parenting days awarded to each parent, the trial court's reconsideration of the parenting plan may alter the total child support award. Accordingly, the trial court's award of child support is similarly vacated and remanded.

### Contempt

Last, Father contends that the trial court erred when it declined to find Mother in contempt. During the proceedings, Father filed a petition requesting the trial court find Mother in "[c]ivil and/or [c]riminal contempt." In its order entered on April 22, 2015, the trial court declined to hold "either party" in contempt, despite the fact that Mother did not file any petition for contempt against Father.

To begin, we note that it is not immediately clear as to whether Father sought Mother be found in criminal or civil contempt. Mother's brief to this Court provides minimal insight on the issue of contempt. However, inasmuch as the trial court found that Mother could not be found in criminal contempt, such decision must be affirmed because the double jeopardy provisions of the United States and Tennessee Constitutions bar an appeal from the acquittal

of criminal contempt. U.S. CONST. amend. V; TENN. CONST. art. 1, § 10; ***Overnite Transp. Co. v. Teamsters Local Union No. 480***, 172 S.W.3d 507, 510 (Tenn. 2005) (holding that because of double jeopardy concerns, "an appeal from an acquittal of criminal contempt is barred"). Accordingly, any purported acquittal of Mother from criminal contempt by the trial court is hereby affirmed.

A petition for civil contempt is typically brought to enforce private rights, *see* ***Robinson v. Air Draulics Eng'g Co.***, 377 S.W.2d 908, 912 (Tenn. 1964). The safeguards afforded to one facing criminal contempt are not available to one accused of civil contempt. According to the Tennessee Supreme Court,

> Tennessee Rule of Appellate Procedure 3(a) governs the right to appeal a trial court's order declining to hold an alleged contemnor in civil contempt in a civil case. Rule 3(a) provides that "[i]n civil actions every final judgment entered by a trial court from which an appeal lies to the Supreme Court or Court of Appeals is appealable as of right." Rule 3(a) does not exclude civil contempt proceedings from an appeal as of right, and we can discern no reason to impose such restriction.

Additionally, it is well-settled that findings of fact and conclusions of law are also required in the context of a civil contempt petition. ***Lovlace v. Copley***, 418 S.W.3d 1 (Tenn. 2013). In *Lovlace*, the Tennessee Supreme Court found error with a trial court's failure to comply with Rule 52.01 in that it failed to "include sufficiently specific findings on the disputed facts that were crucial to determining the elements of civil contempt." ***Id.*** at 35. The Court explained that "[t]here is no bright-line test by which to assess the sufficiency of factual findings, but 'the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue.'" ***Id.*** (quoting 9C Charles A. Wright et al., *Federal Practice and Procedure* § 2571, at 328 (3d ed. 2005)). Thus, a trial court must make appropriate findings of fact and conclusions of law with regard to a civil contempt petition.

Here, the trial court did not make any factual findings or conclusions of law regarding its disposition of Father's petition to hold Mother in contempt. Instead the trial court's order merely provides that it "will not hold either party in contempt at this time." The order does not contain any reasoning for not finding Mother in civil contempt. The trial court also rendered no oral ruling to which this Court could refer to illuminate its reasoning. Respectfully, the trial court's ruling fails to comport with the letter or the spirit of Rule 52.01.

The issues in this case concern sharply contested disputes regarding both parents' fitness to care for and parent the child. Under these circumstances, we conclude that the best remedy is to vacate the judgment of the trial court with regard to the permanent parenting

plan and the civil contempt petition against Mother, and remand for the entry of orders fully compliant with Rule 52.01.

## Conclusion

The judgment of the Circuit Court of Hamilton County is hereby vacated in part as to the trial court's decisions regarding the parenting plan, child support, and civil contempt. The trial court's ruling declining to hold Mother in criminal contempt is affirmed. The parenting plan accompanying the trial court's October 25, 2011 order should remain in effect until the entry of an order in accord with this Opinion. This cause is remanded to the trial court for further proceedings in accordance with this Opinion. Costs of this appeal are taxed one-half to Appellant Jason Lamar Howard, and his surety, and one-half to Appellee Cynthia Teresa Wallin Howard, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE