IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 7, 2021 Session

## JEREMY KHRISTIAN ABNEY v. KAITLYNNE NICHOLE PACE

**Appeal from the Chancery Court for Rutherford County**
**No. 17CV-102       Howard W. Wilson, Chancellor**

_____

**No. M2020-00182-COA-R3-CV**

_____

This appeal arises from a post-divorce proceeding. The father filed a petition to modify child support, and the mother filed a civil contempt action against the father for failure to pay child support as ordered by the court. Following trial, the trial court found that a significant variance existed from the previously ordered child support obligation and granted the father's petition to modify child support. The trial court retroactively modified the father's child support obligation from the date the petition was filed, resulting in three modifications while the petition had been pending. In the respective child support worksheets for the modifications, the trial court declined to include a credit to the mother for the health insurance premiums she had paid for the child, determining such expense of additional insurance coverage not to be "a reasonable necessity or requirement." In consideration of the mother's civil contempt complaint, the trial court found that the father had been in contempt of court due to his failure to pay child support as ordered by the court but that he had cured his contempt due to an involuntary payment from his income tax refund proceeds and the retroactive modification of his obligation and resultant overpayment of child support while the petition to modify was pending. The trial court further denied an award of attorney's fees to either party. Discerning no error, we affirm the trial court in all respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Christina Hammond Zettersten, Brentwood, Tennessee, for the appellant, Kaitlynne Nichole Pace.

Amanda L. Conklin, Murfreesboro, Tennessee, for the appellee, Jeremy Khristian Abney.

# OPINION

## Background

Jeremy Khristian Abney ("Father") and Kaitlynne Nichole Pace ("Mother") are the parents of the minor child, J.A. ("the Child"). Mother and Father were married in April 2015 and separated in April 2016. Father filed a complaint for divorce in January 2017 in the Rutherford County Chancery Court ("Trial Court"). The Trial Court heard the divorce action in July 2018 and subsequently entered an order in November 2018. In its order, the Trial Court declared the parties divorced, pursuant to Tennessee Code Annotated § 36-4-129.

The permanent parenting plan entered by the Trial Court designated Mother as the primary residential parent of the Child, with Mother receiving 216 days with the Child and Father receiving 149 days. The Trial Court found that Mother's monthly income at the time was $2,012.83 and that Father's monthly income was $4,672.11. In the child support calculations, Mother was given credit for another child in her home, as well as work-related childcare expenses in the amount of $693.33. As such, Father was ordered to pay child support to Mother in the amount of $1,006.00 per month. Mother also was awarded a judgment against Father of $353.79 for his portion of uncovered medical expenses for the Child that were incurred prior to trial; $3,879.00 for his child support arrearage from the three months preceding trial; and $1,000.00 for claiming the Child on his income tax return for the previous year. These judgments totaled $5,232.79, to be paid by Father in increments of $200.00 per month. The permanent parenting plan also provided that Father would maintain health insurance for the Child. There was no such order requiring Mother to provide health insurance for the Child.

Shortly thereafter, Father filed a "Petition to Review and Modify Support," alleging that the parties' incomes had changed and that the child support obligation should be modified pursuant to the child support guidelines. According to Father's petition, Mother then was employed full time with the Rutherford County School System with an additional part-time job, and Father also had obtained new employment and new health insurance for the Child. In his petition, Father requested the modification of child support be retroactive to the filing of the petition.

Mother subsequently filed an answer requesting that Father's petition be dismissed because he had "voluntarily changed jobs" to a job with lower pay and stated that willful underemployment was not grounds for modification of child support. In her answer, Mother acknowledged that she was now working for the Rutherford County School System as Father had stated in his petition. Mother also included a counter-complaint, requesting

that Father be held in civil contempt of court and alleging that Father had willfully failed to pay his child support as ordered by the Trial Court. Additionally, Mother further alleged that Father had not provided proof to her of the health insurance Father was required to provide for the Child. In her counter-complaint, Mother requested that she be awarded her attorney's fees. Father filed an answer to Mother's counter-complaint, denying the aforementioned allegations of contempt against Father and requesting that the counter-complaint be dismissed.

The Trial Court conducted a trial on two nonconsecutive days in August and September 2019. Mother and Father testified at trial. The Trial Court entered an order in September 2019 with its findings of fact and conclusions of law. The Trial Court granted Father's petition to modify his child support obligation. The Trial Court found that around the time the petition was filed in November 2018, Father was earning an income of $5,166.67 per month and paying $32.58 per month in health insurance premiums for the Child. At that time, Mother was working at Rutherford County Schools earning an income of $3,345.00 a month and paying, according to Mother's calculations, $51.53 per month for health insurance premiums for the Child.[1] Mother testified that she had been providing health insurance for the Child through her employer and requested a credit for the amount of the health insurance premiums she had paid for the Child's benefit. The health insurance premium Mother paid included coverage for both the Child and Mother's other child, which totaled $103.05 for both children.

Father testified that he had consistently provided health insurance for the Child since before the parties' divorce but that the insurance company had changed at some point. Mother argued at trial that she was unaware Father was continuing to provide insurance for the Child because Father had not provided her with the insurance card until a couple months before the second day of trial. According to Mother, she then obtained health insurance for the Child through her employment to cover the Child and the Child's half-sibling. Mother, however, acknowledged that Father had been providing health insurance for the Child.

Although Mother agreed that a significant variance existed by the time of trial, Mother argued that there was no fifteen-percent variance sufficient to modify child support when the petition was filed if Mother was given credit for the health insurance premiums she was paying for the Child's benefit. The Trial Court disagreed with Mother's argument that she should be provided credit for the health insurance premium in calculating child support, finding that expense to be not a "reasonable necessity or requirement" because

---

[1] In Father's brief, he uses a different gross income for Mother in the child support worksheet for the time the petition was filed. The Trial Court used only Mother's income at Rutherford County Schools. However, Father includes income from a job at a bowling alley, where Mother had worked part time. Mother testified that she left that job in November or December 2018, but it is unclear exactly when she stopped working at the bowling alley or what her income would have been for December 2018 when the modification began.

Father had consistently provided health insurance for the Child as he had been ordered to do during the divorce proceedings. Finding that a fifteen-percent variance existed between the current child support and the presumptive child support, the Trial Court modified Father's child support obligation to $840.00 per month beginning in December 2018.

The Child began preschool in June 2019, and the expense of childcare ceased. Using the parents' incomes from the previous child support worksheet and the same health insurance premium expense, the Trial Court modified Father's child support obligation during June and July 2019 to $396.00 per month.

Mother's income increased in August 2019 to $3,658.33 per month when she began working for Cannon County Schools. Mother testified that, based on a table developed by her mother from an insurance information packet, she had signed up for insurance with her new employer that would be $175.32 per month in health insurance premiums for the Child's benefit. However, Mother testified that she was unsure of the exact amount she would be paying for insurance premiums because she had not yet received her first paycheck from Cannon County Schools. The Trial Court again did not allow Mother credit for health insurance she provided for the Child. Using the same health insurance premium expense as before and Mother's updated income, the Trial Court modified Father's child support obligation from August 2019 forward to $373.00 per month.

In its order, the Trial Court found as follows concerning the contempt allegations:

> The record reflects that Father was ordered to pay child support at the rate of $1,006.00 per month, and an additional $200.00 per month toward a judgment awarded to Mother in the parties' Final Decree of Divorce. Said payments were ordered by wage assignment, and several wage assignments are contained in the record evidencing attempts to withhold the correct amounts from Father's income. From the date of the final divorce hearing on July 17, 2018 until entry of the Final Decree of Divorce on November 6, 2018, it is acknowledged that varying amounts were paid into the child support receipting unit via these wage assignments, but that the correct amount of $1,206.00 ($603.00 per pay period) was not ultimately withheld until May 24, 2019. The Child Support Receipting Ledger reflects that no child support payments were received from Father pursuant to the wage assignment for the month of October, 2018. A total of $8,633.68 was received by the child support receipting unit from July 21, 2018 to April 5, 2019 from Father's income. Father also submitted two (2) checks directly to Mother on July 31, 2018 and September 4, 2018 in the amount of $200.00 each, for a total of $9,033.68 in payments during said period.

Therefore, under the current child support order, Father, knowing that he was ordered to pay a total $1,206.00 per month to Mother, failed to pay the ordered monthly child support obligation, including judgment payments, each month. While the Court hereby finds that Father was in Civil Contempt for failure to pay the child support obligation and judgment payments as ordered every month between July 17, 2018 and April 5, 2019, based on the involuntary payment of $1,764.00 received by the child support receipting unit on April 5, 2019 from Father's tax refund, as well as for the reasons stated further herein, the Court hereby finds that Father has cured himself of any contempt.

(Paragraph numbering and internal citation omitted.) The Trial Court further found that as a result of Father's overpayment of child support from when the petition had been filed, Father's excessive payments had decreased his judgment owed to Mother to $64.73, which the Trial Court ordered Father to pay within thirty days.

At the conclusion of trial, the Trial Court declined to award attorney's fees to either party, finding that both parties had waived their respective requests for attorney's fees. Mother subsequently filed a motion to alter or amend, asking that the Trial Court amend its order to include a credit for Mother of the health insurance premiums that she had paid for the Child. In her motion, Mother also requested that Father pay her attorney's fees. The Trial Court conducted a hearing and denied Mother's motion after finding that no basis existed to alter or amend the judgment. Mother timely appealed to this Court.

## **Discussion**

Although not stated exactly as such, Mother raises the following issues for our review on appeal: (1) whether the Trial Court erred by declining to give Mother credit for the health insurance she carried for the Child; (2) whether the Trial Court erred in finding that a fifteen-percent variance had occurred since the previous child support order, requiring that child support be modified; (3) whether the Trial Court erred by declining to find Father in contempt due to his failure to make child support payments; and (4) whether the Trial Court erred by declining to award Mother her attorney's fees incurred because Father was in contempt.

In child support modification cases, a trial court's findings of fact are reviewed de novo with a presumption of correctness. *See Massey v. Casals*, 315 S.W.3d 788, 793 (Tenn. Ct. App. 2009). Questions of law are reviewed de novo with no presumption of correctness. *Id.* at 794. Due to an element of discretion with child support decisions, we review a trial court's decisions concerning child support using an abuse of discretion standard; however, that discretion is hemmed in by the Child Support Guidelines.

- 5 -

*Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). As this Court stated regarding the standard of review for child support cases:

> Ever since 1984, the process and criteria for ascertaining a parent's child support obligation has been governed by Child Support Guidelines promulgated by the Tennessee Department of Human Services in accordance with Tenn. Code Ann. § 36-5-101(e) (Supp. 2004). . . . [T]he adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes,* 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones,* 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith,* 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

> Under current law, the amount of support derived from a proper application of the formula in the Child Support Guidelines becomes the presumptive amount of child support owed. This amount of support is rebuttable. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.01(1)(d)(1) (Mar. 2005); *Taylor v. Fezell,* 158 S.W.3d 352, 357 (Tenn. 2005). Accordingly, trial courts may, in their discretion, deviate from the amount of support required by the Child Support Guidelines, *State v. Wilson,* 132 S.W.3d 340, 343 (Tenn. 2004); *Jones v. Jones,* 930 S.W.2d at 545, but when they do, they must make specific written findings regarding how the application of the Child Support Guidelines would be unjust or inappropriate in the case. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b) (Mar. 2005).

> Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard.

*Richardson v. Spanos*, 189 S.W.3d 720, 724-25 (Tenn. Ct. App. 2005).

Recently, our Supreme Court stated as follows concerning the abuse of discretion standard:

> This Court has described the abuse of discretion standard in some detail:

>> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. It reflects an awareness that the decision being reviewed involved a choice among several acceptable

- 6 -

alternatives. Thus, it does not permit reviewing courts to second-guess the court below, or to substitute their discretion for the lower court's. The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny.

Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citations omitted); *see also BIF, a Div. of Gen. Signals Controls, Inc. v. Serv. Const. Co.*, No. 87-136-II, 1988 WL 72409, at *2 (Tenn. Ct. App. July 13, 1988) (citations omitted) ("The standard conveys two notions. First, it indicates that the trial court has the authority to choose among several legally permissible, sometimes even conflicting, answers. Second, it indicates that the appellate court will not interfere with the trial court's decision simply because it did not choose the alternative the appellate court would have chosen.").

*Lee Medical* provided the framework for determining whether a trial court has properly exercised its discretion:

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions.

*Lee Med.*, 312 S.W.3d at 524-25 (citing *Flautt & Mann v. Council of City of Memphis*, 285 S.W.3d 856, 872-73 (Tenn. Ct. App. 2008) (quoting *BIF*, 1988

WL 72409, at *3)); s*ee also Vodafone Americas Holdings, Inc. & Subsidiaries v. Roberts*, 486 S.W.3d 496, 514 (Tenn. 2016).

*Harmon v. Hickman Cmty. Healthcare Servs., Inc.*, 594 S.W.3d 297, 305-06 (Tenn. 2020). As our Supreme Court has instructed: "A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining. The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Borne v. Celadon Trucking Servs., Inc.*, 532 S.W.3d 274, 294 (Tenn. 2017) (internal citations, brackets, and quotation marks omitted).

We first address whether the Trial Court erred by declining to provide Mother credit for the amount she paid for health insurance for the Child in the child support calculation. In the original child support order, Father was ordered to provide health insurance for the Child, not Mother. Father provided the health insurance as ordered. Mother had another child and provided health insurance for both the Child and the Child's half-sibling. According to Mother, she paid a total of $103.05 for health insurance for the two children, of which Mother claimed $51.53 for additional insurance for the Child, at the time the petition to modify support was filed. During oral argument, Mother's attorney acknowledged that she believed the cost to insure the children with Mother's health insurance policy was the same whether there was one child or two children on the policy. Although arguing she had believed Father was not providing insurance as ordered, Mother acknowledged during trial that Father did carry health insurance for the Child.

In the respective child support worksheets for the modifications, the Trial Court declined to include a credit for Mother of the health insurance premiums she had paid for the Child. In the initial child support worksheet, Mother requested a credit of $51.53 for additional health insurance coverage she procured for the Child. Mother subsequently requested a credit of $175.32 for her additional health insurance policy after she changed employment and insurance policies. The Trial Court found that this expense was not reasonable when Father consistently provided coverage as previously ordered by the court. Rule 1240-02-04-.04(8)(b)(1) of the Child Support Guidelines provides that if a parent can obtain health insurance for the child "at reasonable cost," the amount of the premium should be included when calculating the basic child support obligation.[2] Although Mother argues that the Trial Court's decision not to provide her credit for the Child's health insurance premium necessitates review as a deviation from the child support guidelines, we determine the relevant issue to be whether the expense of the insurance coverage

---

[2] The Child Support Guidelines were amended in May 2020, following the trial and judgment in this matter. *See* 2020 TN REG TEXT 526643. Because the trial and judgment in this matter occurred before the adoption of the current guidelines, we will analyze this case by utilizing the guidelines in effect at that time.

procured by Mother for the Child was an unreasonable cost in light of Father's continued coverage for the Child as found by the Trial Court. If such coverage was not a reasonable cost, there is no requirement that the health insurance premium be included in the child support calculation, and as such, there would be no deviation from the presumptive child support obligation.

Trial Courts are awarded an element of discretion in these child support guidelines so long as they comply with the child support guidelines. *See Richardson*, 189 S.W.3d at 724-25. The Trial Court found, and the evidence supports, that Father continuously provided health insurance for the Child from before the parties' divorce. An abuse of discretion standard prevents us from second-guessing the Trial Court's decision or substituting our judgment for that of the Trial Court. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 524-25. The Trial Court found that because Father continuously provided health insurance for the Child as ordered by the Trial Court, Mother's decision to provide additional health insurance coverage not to be "a reasonable necessity or requirement" and declined to provide Mother credit for the health insurance premium. Under these circumstances and our standard of review, we hold that the Trial Court did not abuse its discretion when determining that the expense of Mother's additional health insurance premium was not a reasonable cost because Father provided health insurance for the Child as ordered. We, therefore, affirm the Trial Court's decision not to credit Mother with the cost of the insurance premium for her additional health insurance policy as being unnecessary and not a reasonable cost.

Rule 1240-02-04-.05(2)(c) of the Child Support Guidelines provides for modification of child support orders if there is a fifteen-percent variance between the current amount of child support and the amount of proposed presumptive support. Because we determine that the Trial Court did not abuse its discretion by declining to credit Mother with the premiums for the health insurance she carried which covered the Child, there is no dispute that a fifteen-percent variance existed to allow the Trial Court to modify child support.[3]

We next address whether the Trial Court erred by declining to find Father in contempt of court. With regard to civil contempt, our Supreme Court has instructed:

> Civil contempt claims based upon an alleged disobedience of a court order have four essential elements. First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have

---

[3] In her brief, Mother's argument that there was no fifteen-percent variance relies on her argument that the Trial Court erred by failing to give Mother credit for the health insurance premium for the health insurance she obtained which covered the Child.

violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

* * *

After determining that a person has willfully violated a lawful and sufficiently clear and precise order, the court may, in its discretion, decide to hold the person in civil contempt. *See Robinson v. Air Draulics Eng'g Co.,* 214 Tenn. 30, 37, 377 S.W.2d 908, 912 (1964). The court's decision is entitled to great weight. *Hooks v. Hooks,* 8 Tenn.Civ.App. (Higgins) 507, 508 (1918), *Hooks v. Hooks,* 8 Tenn.Civ.App. (Higgins) 507, 508 (1918). Accordingly, decisions to hold a person in civil contempt are reviewed using the abuse of discretion standard of review. *Hawk v. Hawk,* 855 S.W.2d 573, 583 (Tenn. 1993); *Moody v. Hutchison,* 159 S.W.3d 15, 25-26 (Tenn. Ct. App. 2004). This review-constraining standard does not permit reviewing courts to substitute their own judgment for that of the court whose decision is being reviewed. *Williams v. Baptist Mem'l Hosp.,* 193 S.W.3d 545, 551 (Tenn. 2006); *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001).

*Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 354-58 (Tenn. 2008) (internal footnotes omitted).

In this case, Father was ordered during the parties' divorce proceedings to pay $1,006 in current child support, as well as $200 per month due to a judgment against him that resulted from his child support arrearage, his portion of the Child's uncovered medical expenses, and for claiming the Child on his income tax return. Per the previous child support order, Father was to pay Mother a total of $1,206 per month, including $200 on the judgment against him. Because the Trial Court found that a fifteen-percent variance existed between the $1,006 of current support and the proposed presumptive support, the Trial Court retroactively modified Father's child support obligation from the date the petition was filed. From December 1, 2018, Father's child support obligation was modified to $840 per month based on the change in the parents' incomes when the petition was filed. From June 1, 2019, Father's monthly child support obligation became $396 due to removal of the work-related childcare expense Mother was paying before the Child started preschool. From August 1, 2019, Father's child support obligation decreased to $373 per month due to Mother's increase of income at that time. Additionally, an involuntary child support payment was made in April 2019 of $1,764 from Father's income tax refund.

Although the Trial Court found that Father was in civil contempt of court due to his failure to pay child support as ordered, it recognized that because Father's child support obligation had been modified retroactively to the date the petition to modify was filed, Father had been overpaying child support since that time. The Trial Court further credited

Father with two upcoming child support payments that would result in overpayment that month due to Father's inability to change the wage assignment prior to the payments being made. Because of the overpayments made by Father and the involuntary child support payment taken from Father's income tax refund, Father had paid down the existing judgment against him to only $64.73, which the Trial Court directed Father to pay to Mother within thirty days. This judgment calculated by the Trial Court included the times Father had not complied with the child support order. The Trial Court found that while Father was in civil contempt, Father had "cured himself of any contempt."

This is a civil contempt action, not criminal. Punishment in civil contempt actions "is designed to coerce compliance with the court's order." *Doe v. Bd. of Prof'l Responsibility of Supreme Court of Tennessee*, 104 S.W.3d 465, 473 (Tenn. 2003). In civil contempt proceedings, "the one in contempt has the 'keys to the jail' and can purge the contempt by complying with the court's order." *Ahern v. Ahern*, 15 S.W.3d 73, 79 (Tenn. 2000) (citing Tenn. Code Ann. § 29-9-104; *Garrett v. Forest Lawn Mem'l Gardens, Inc.*, 588 S.W.2d 309, 315 (Tenn. Ct. App. 1979)); *see also Self v. Self*, No. M2014-02295-COA-R3-CV, 2015 WL 5610657, at *1 (Tenn. Ct. App. Sept. 23, 2015) ("The court ruled that Father was not in civil contempt because he had cured his contemptuous conduct and we find no error with the contempt ruling.").

Having already determined that the Trial Court did not abuse its discretion by declining to give Mother credit for the health insurance she purchased, we hold that the Trial Court correctly provided Father with credit for overpayments of child support made during the pendency of the action, due to the retroactive modification of child support to the date the petition was filed. In this case, Father's overpayments of child support throughout the proceedings essentially had purged his contempt, which is allowed in civil contempt proceedings. As such, we affirm the Trial Court's decision concerning Mother's petition requesting Father be held in contempt of court due to his nonpayment of child support.

Mother argues on appeal that the Trial Court erred by failing to award her attorney's fees. At the conclusion of trial, Father requested an award of attorney's fees for the child support modification. Mother requested attorney's fees for the contempt action. The Trial Court gave the parties the opportunity to leave court with no awards of attorney's fees to either party or stated that it would order awards of attorney's fees for both parties (i.e. an award to Father for the child support modification and an award to Mother for the contempt action). In response, Mother's attorney stated as follows: "I think [Mother] will waive her request for attorney's fees if the request was made on the other side." The Trial Court, therefore, found that both Mother and Father had waived their requests for attorney's fees and ordered that each party was responsible for their own attorney's fees. Despite Mother's arguments that the Trial Court erred when it declined to award her attorney's fees that were incurred due to the contempt action, the record is clear that Mother waived her request of

- 11 -

those fees during the September 2019 hearing. We, therefore, find no error with the Trial Court's finding that Mother waived her request for attorney's fees incurred during the trial court proceedings.

To the extent that Father in the argument section of his appellate brief is requesting an award of his attorney's fees incurred during the appeal, we deny such request. Father failed to raise as an issue on appeal in his statement of the issues that he was requesting an award for attorney's fees on appeal. We determine that Father has waived this issue. *See Rigsby v. Rigsby*, No. E2014-02095-COA-R3-CV, 2015 WL 7575075, at *7 (Tenn. Ct. App. Nov. 25, 2015) ("Because [the appellant] did not raise the issue of attorney's fees on appeal in her statement of the issues, we determine this issue to be waived." (citing *Champion v. CLC of Dyersburg, LLC,* 359 S.W.3d 161, 163 (Tenn. Ct. App. 2011))). Therefore, we deny Father's request for attorney's fees on appeal.

## Conclusion

Based on the foregoing, we affirm the Trial Court's judgment in all respects. This cause is remanded to the Trial Court for collection of the costs assessed below. The costs on appeal are assessed against the appellant, Kaitlynne Nichole Pace, and her surety, if any.

s/ D. Michael Swiney
D. MICHAEL SWINEY, CHIEF JUDGE